1   Aton Arbisser (State Bar No. 150496)
    Email address: aarbisser@kayescholer.com
2   Jonathan Rotter (State Bar No. 234137)
    Email address: jrotter@kayescholer.com
3   KAYE SCHOLER LLP
    1999 Avenue of the Stars, Suite 1700
4   Los Angeles, California 90067
    Telephone: (310) 788-1000
5   Facsimile: (310) 788-1200

6   Attorneys for Defendant
    THE COLEMAN COMPANY, INC.

7

8                    **UNITED STATES DISTRICT COURT**

9            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10                        **CENTRAL DIVISION**

11  MAG INSTRUMENT, INC., a          )   Case No. CV 09-01842-R (OPx)
    California corporation,          )
12                                   )
                                     )   **DECLARATION OF**
13               Plaintiff,          )   **JONATHAN ROTTER IN**
                                     )   **SUPPORT OF COLEMAN'S**
14          v.                       )   **SUMMARY JUDGMENT**
                                     )   **MOTION**
15  THE COLEMAN COMPANY,             )
    INC., a Delaware corporation, and)
16  DOES 1-10,                       )
                                     )
17               Defendants.         )   **Date: February 8, 2010**
                                     )   **Time: 10:00 a.m.**
18                                   )   **Place: Courtroom 8**
                                     )
19  AND RELATED COUNTERCLAIMS )       **Honorable Manuel L. Real**
                                     )
20                                   )
                                     )
21  _____ )

22

23

24

25

26

27

28

KAYE SCHOLER LLP

I, Jonathan Rotter, declare:

1.     I am an attorney with the law firm of Kaye Scholer LLP, counsel for Defendant/Counterclaimant The Coleman Company, Inc. ("Coleman") in this action. I am a member of the Bars of this Court and the State of California. I make this declaration in support of Coleman's Summary Judgment Motion.  I have personal knowledge of the facts stated in this declaration and if called as a witness could testify competently thereto.

2.     Attached hereto as Exhibit 1 is a true and correct copy of Patent 7,410,272 ("Halasz Patent").

3.     Attached hereto as Exhibit 2 is a true and correct copy of excerpts from the deposition of Christopher Halasz taken on December 29, 2009.

4.     Attached hereto as Exhibit 3 is a true and correct copy of Mag's Objections and Responses to the Coleman Company, Inc.'s First Set of Requests for Admission (Nos. 1-7) dated October 13, 2009.

5.     Attached hereto as Exhibit 4 is a true and correct copy of the April 24, 2007 USPTO Office Action in the prosecution of the Halasz patent, containing a non-final rejection on the basis of United States Patent Number 5,605,394, issued February 25, 1997 to Meng J. Chen.

6.     Attached hereto as Exhibit 5 is a true and correct copy of United States Patent Number 5,605,394, issued February 25, 1997, to Meng J. Chen.

7.     Attached hereto as Exhibit 6 is a true and correct copy of Mag's July 24, 2007 Amendment and Response in the prosecution of the Halasz patent.

8.     Attached hereto as Exhibit 7 is a true and correct copy of Coleman's June 24, 2009 Request for *Inter Partes* Reexamination of the Halasz patent except for the Halasz Patent and the exhibits which are separately listed below.

9.     Attached hereto as Exhibit 8 is a true and correct copy of United Kingdom Patent Number 248,030 to Theodore Stretton.

23280362.DOC                                    ROTTER DECLARATION

10.     Attached hereto as Exhibit 9 is a true and correct copy of United States Patent Number 6,142,644 to Chan Sik Leung.

11.     Attached hereto as Exhibit 10 is a true and correct copy of United States Patent Number 2,612,598 to Frank Berman.

12.     Attached hereto as Exhibit 11 is a true and correct copy of United States Patent Number 4,967,323 to Melissa Johnson, et al.

13.     Attached hereto as Exhibit 12 is a true and correct copy of United States Patent Number 4,521,831 to John Thayer.

14.     Attached hereto as Exhibit 13 is a true and correct copy of the United States Patent and Trademark Office's July 24, 2009 Order granting reexamination of the Halasz patent.

15.     Attached hereto as Exhibit 14 is a true and correct copy of the United States Patent and Trademark Office's October 14, 2009 initial office action in the *Inter Partes* Reexamination of the Halasz patent, which was a non-final rejection of Claims 1 and 2 (the asserted claims) of the Halasz patent.

16.     Attached hereto as Exhibit 15 is a true and correct copy of Mag's December 9, 2009 Request for Extension of Time for the *Inter Partes* Reexamination.

17.     Attached hereto as Exhibit 16 are photographs of the Petzl Micro and its packaging identified as Exhibit 7 in the Deposition of Christopher Halasz at p. 43:10-23.

I declare under penalty of perjury under the laws of the United States of America that the following is true and correct.  Executed December 31, 2009.


/s/ Jonathan Rotter

23280362.DOC                                ROTTER DECLARATION

# EXHIBIT 1

US007410272B2

(12) **United States Patent**       (10) **Patent No.:**       **US 7,410,272 B2**

Halasz                              (45) **Date of Patent:**       *Aug. 12, 2008

(54) **LIGHTING DEVICE**

(75) Inventor: **Christopher Lee Halasz**, Parker, CO (US)

(73) Assignee: **Mag Instrument, Inc.**, Ontario, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **11/607,259**

(22) Filed: **Dec. 1, 2006**

(65) **Prior Publication Data**

US 2007/0076410 A1       Apr. 5, 2007

**Related U.S. Application Data**

(63) Continuation of application No. 11/137,214, filed on May 24, 2005, now abandoned, which is a continuation of application No. 09/927,484, filed on Aug. 10, 2001, now Pat. No. 6,905,223.

(60) Provisional application No. 60/224,313, filed on Aug. 10, 2000.

(51) **Int. Cl.**
      *F21L 4/04*       (2006.01)

(52) **U.S. Cl.** ........................ **362/296**; 362/197; 362/287

(58) **Field of Classification Search** ................. 362/197, 362/287, 427
      See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 555,183 | A | 2/1896 | Rhind |
| 577,156 | A | 2/1897 | Bragger |
| 926,114 | A | 6/1909 | Hall |
| 1,186,428 | A | 6/1916 | Newman |
| 1,513,211 | A | 10/1924 | Barany |
| 1,584,539 | A | 5/1926 | Hopkins |
| 1,603,272 | A | 10/1926 | Eaton |
| 1,608,195 | A | 11/1926 | Barany |
| 1,638,716 | A | 8/1927 | Surles |
| 1,644,126 | A | 10/1927 | Harris |
| 1,674,650 | A | 6/1928 | Leser |
| 1,680,169 | A | 8/1928 | Osean |
| 1,680,188 | A | 8/1928 | Weber |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | 114558 | 1/1942 |

(Continued)

*Primary Examiner*—Anabel M Ton
(74) *Attorney, Agent, or Firm*—Jones Day

(57) **ABSTRACT**

A portable, battery-operated flashlight having improved pivoting, switching and focusing features is disclosed. In one aspect of the invention, the flashlight takes the form of an attachment to a head gear for hands free use. In another aspect of the invention, the flashlight takes the form of a head lamp held in place on an user's head by an elastic band. The pivot connection between the body and the base, as well as the serrations on an exterior surface of the body, allows a user to adjust any angular direction of the light as desired. In another aspect of the invention, the flashlight takes the form of a long-handled flashlight having improved switching and focusing capabilities, such that axial movement of the switching assembly turns the flashlight "on" or "off," as well as causing a position of the lamp to vary in order to focus or defocus the light.

**7 Claims, 12 Drawing Sheets**



Exhibit 1
Page 3

**US 7,410,272 B2**

Page 2

## U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 1,722,773 A | 7/1929 | Stewart |
| 1,758,835 A | 5/1930 | Hime |
| 1,823,762 A | 9/1931 | Rathmann |
| 1,851,503 A | 3/1932 | Flamm |
| 2,016,819 A | 10/1935 | Meginniss ............... 240/10.66 |
| 2,097,222 A | 10/1937 | Tompkins et al. ........ 240/10.66 |
| 2,173,650 A | 9/1939 | Fullmer ................... 240/10.66 |
| 2,176,301 A | 10/1939 | Haas ........................ 240/10.66 |
| 2,212,103 A | 8/1940 | Rothenberg et al. ....... 240/10.69 |
| 2,259,106 A | 10/1941 | Hager ......................... 200/60 |
| 2,272,907 A | 2/1942 | Deibel ..................... 240/10.61 |
| 2,338,078 A | 12/1943 | Wood .................... 240/10.66 |
| 2,339,356 A | 1/1944 | Sachs ..................... 240/10.69 |
| 2,396,046 A | 3/1946 | Hipwell et al. .......... 240/10.66 |
| 2,442,736 A | 6/1948 | Valentine ................... 248/124 |
| 2,490,830 A | 12/1949 | Norton ................... 240/10.68 |
| 2,530,913 A | 11/1950 | Shackel ................... 240/10.6 |
| 2,599,295 A | 6/1952 | Thomas ........................ 200/60 |
| 2,915,621 A | 12/1959 | Garland ................. 240/10.66 |
| 2,931,005 A | 3/1960 | Saurwein et al. ........... 339/182 |
| 2,945,944 A | 7/1960 | Gillespie ................. 240/10.68 |
| 3,014,125 A | 12/1961 | Draudt .................... 240/10.66 |
| 3,076,891 A | 2/1963 | Moore .................... 240/10.66 |
| 3,652,846 A | 3/1972 | Starck, II ............... 240/10.63 |
| 4,114,187 A | 9/1978 | Uke ......................... 362/158 |
| 4,151,583 A | 4/1979 | Miller ..................... 362/205 |
| 4,170,337 A | 10/1979 | Davis ....................... 248/475 |
| 4,220,985 A | 9/1980 | Hukuba ................... 362/203 |
| 4,286,311 A | 8/1981 | Maglica ................... 362/205 |
| 4,388,673 A | 6/1983 | Maglica ................... 362/183 |
| 4,398,238 A | 8/1983 | Nelson .................... 362/187 |
| 4,399,498 A | 8/1983 | Bacevius ................. 362/396 |
| 4,429,351 A | 1/1984 | Petz et al. ............... 362/187 |
| 4,472,766 A | 9/1984 | Hung ...................... 362/158 |
| 4,495,551 A | 1/1985 | Foltz ....................... 362/205 |
| 4,506,317 A | 3/1985 | Duddy .................... 362/396 |
| 4,527,223 A | 7/1985 | Maglica ................... 362/187 |
| 4,531,178 A | 7/1985 | Uke ......................... 362/158 |
| 4,570,208 A | 2/1986 | Sassmannshausen ....... 362/188 |
| 4,577,263 A | 3/1986 | Maglica ................... 362/187 |
| 4,581,686 A | 4/1986 | Nelson .................... 362/204 |
| 4,618,081 A | 10/1986 | Miree ......................... 224/41 |
| 4,656,565 A | 4/1987 | Maglica ................... 362/187 |
| 4,658,336 A | 4/1987 | Maglica ................... 362/197 |
| 4,725,932 A | 2/1988 | Gammache .............. 362/202 |
| 4,733,337 A | 3/1988 | Bieberstein ............... 362/206 |
| 4,777,572 A | 10/1988 | Ambasz .................. 362/197 |
| 4,777,582 A | 10/1988 | Sharrah ................... 362/205 |
| 4,819,141 A | 4/1989 | Maglica et al. ........... 362/207 |
| 4,823,242 A | 4/1989 | Maglica et al. ........... 362/187 |
| 4,841,417 A | 6/1989 | Maglica et al. ........... 362/206 |
| 4,843,526 A | 6/1989 | Price, III ................. 362/187 |
| 4,851,974 A | 7/1989 | Maglica ................... 362/187 |

| | | |
|---|---|---|
| 4,864,474 A | 9/1989 | Maglica ................... 362/203 |
| 4,870,550 A | 9/1989 | Uke ......................... 362/158 |
| 4,888,670 A | 12/1989 | Sharrah ................... 362/205 |
| 4,899,265 A | 2/1990 | Maglica ................... 362/187 |
| 4,907,141 A | 3/1990 | Wang ....................... 362/205 |
| 4,914,555 A | 4/1990 | Gammache .............. 362/183 |
| 4,942,505 A | 7/1990 | Maglica ................... 362/187 |
| 4,951,183 A | 8/1990 | Wang ...................... 362/187 |
| 4,956,755 A | 9/1990 | Maglica et al. ........... 362/206 |
| 4,967,325 A | 10/1990 | Shiau ...................... 362/188 |
| 4,980,805 A | 12/1990 | Maglica et al. ............. 362/72 |
| 4,999,750 A | 3/1991 | Gammache .............. 362/203 |
| 5,043,854 A | 8/1991 | Gammache .............. 362/197 |
| 5,062,026 A | 10/1991 | Maglica et al. ............. 362/72 |
| 5,109,321 A | 4/1992 | Maglica et al. ............. 362/72 |
| 5,113,326 A | 5/1992 | Maglica ................... 362/158 |
| 5,122,938 A | 6/1992 | Pastusek ................. 362/203 |
| 5,124,894 A | 6/1992 | Shiau ...................... 362/187 |
| 5,126,927 A * | 6/1992 | Reeves et al. ............. 362/187 |
| 5,128,841 A | 7/1992 | Maglica et al. ............. 362/72 |
| 5,138,537 A | 8/1992 | Wang ...................... 362/187 |
| 5,143,441 A | 9/1992 | Maglica ................... 362/263 |
| 5,158,358 A | 10/1992 | Maglica et al. ........... 362/206 |
| 5,161,095 A | 11/1992 | Gammache .............. 362/197 |
| 5,184,884 A | 2/1993 | Maglica et al. ............. 362/72 |
| 5,213,408 A | 5/1993 | Shiau ...................... 362/187 |
| 5,260,858 A | 11/1993 | Maglica ................... 362/205 |
| 5,270,911 A | 12/1993 | Maglica et al. ........... 362/396 |
| 5,293,307 A | 3/1994 | Maglica ................... 362/203 |
| 5,309,337 A | 5/1994 | Groben .................... 362/206 |
| 5,345,370 A | 9/1994 | Murray et al. ............. 362/205 |
| 5,400,227 A | 3/1995 | Maglica et al. ........... 362/206 |
| 5,515,246 A | 5/1996 | Maglica ..................... 362/72 |
| 5,541,822 A | 7/1996 | Bamber ................... 362/190 |
| 5,605,394 A * | 2/1997 | Chen ....................... 362/205 |
| 5,660,363 A | 8/1997 | Maglica ............... 248/288.31 |
| 5,667,185 A | 9/1997 | Maglica ................... 248/541 |
| 5,806,964 A | 9/1998 | Maglica ................... 362/203 |
| 5,816,684 A | 10/1998 | Yu ............................ 326/191 |
| 5,860,728 A | 1/1999 | Maglica ................... 362/191 |
| 6,004,008 A | 12/1999 | Lai ......................... 362/280 |
| 6,045,236 A | 4/2000 | Cheng et al. ............. 362/188 |
| 6,170,960 B1 | 1/2001 | Maglica ................... 362/205 |
| 6,186,638 B1 | 2/2001 | Chang ..................... 362/119 |
| 6,193,388 B1 | 2/2001 | Halasz et al. ............. 362/205 |
| 6,457,838 B1 | 10/2002 | Dungmore et al. ......... 362/106 |
| 6,905,223 B2 * | 6/2005 | Halasz ..................... 362/197 |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| GB | 549104 | 11/1942 |
| GB | 90 30 6589 | 8/1990 |
| GB | 2 091 863 A | 8/1992 |
| GB | 2 263 162 B | 7/1993 |

* cited by examiner

Exhibit 1
Page 4



Fig. 1

Exhibit 1
Page 5



Fig. 2

Exhibit 1
Page 6



Fig. 3

Exhibit 1
Page 7



Fig. 4

Exhibit 1
Page 8



Fig. 5

Exhibit 1
Page 9



Fig. 6

Exhibit 1
Page 10



Fig. 7

Exhibit 1
Page 11



Fig. 8

Exhibit 1
Page 12



Fig. 9

Exhibit 1
Page 13



Fig 10

Exhibit 1
Page 14

**U.S. Patent**    Aug. 12, 2008    **Sheet 11 of 12**    **US 7,410,272 B2**



Fig. 11

Exhibit 1
Page 15



Fig 12

Exhibit 1
Page 16

US 7,410,272 B2

**1**

## LIGHTING DEVICE

### PRIORITY

This application is a continuation of U.S. patent application Ser. No. 11/137,214, filed May 24, 2005 now abandoned, now pending, which is a continuation of U.S. patent application Ser. No. 09/927,484, filed Aug. 10, 2001, now U.S. Pat. No. 6,905,223, which in turn claimed priority to U.S. Patent Application Ser. No. 60/224,313, filed Aug. 10, 2000. The foregoing applications are incorporated by reference as if fully set forth herein.

### FIELD OF INVENTION

The present invention relates to the field of portable, battery-operated flashlights. More particularly, the present invention relates to a portable, battery-operated flashlight having improved pivoting features such that it may be worn as a head lamp. In another aspect of the invention, the portable, battery-operated flashlight has improved switching and focusing features such that the lamp's position in the reflector may be varied to focus or defocus the light from the lamp.

### BACKGROUND OF INVENTION

Flashlights generally include a battery chamber for retaining one or more batteries, a light bulb electrically connected to the one or more batteries, and a reflector for reflecting the light from the light bulb in a particular direction. The electrical connection between the batteries and the light bulb usually includes a switch mechanism for selectively providing electrical energy from the batteries to the light bulb and, therefore, enabling the flashlight to be turned on and off.

A primary function of flashlights is to provide a convenient portable, storable light source that is capable of projecting light in a particular direction. However, it is difficult in some flashlights to project light in a particular direction because of the stationary nature and fixed connectivity of flashlight parts relative to each other. In addition, the difficulty of light projection in a desired direction may be also limited by the inflexible nature of the reflector.

### SUMMARY OF INVENTION

The present invention satisfies, to a great extent, the foregoing and other needs not currently satisfied by existing flashlights. This result is achieved, in an exemplary embodiment, by a portable, battery-operated flashlight having an improved pivot point for the lamp portion. In this embodiment, the flashlight takes the form of an attachment usable as a head worn lamp, which may be attached to head gear such as a safety helmet or include an elastic band to secure the flashlight to a user's head.

The flashlight comprises a body, a base portion and a lamp. The body is for retaining at least one battery, and has a serrated-like surface on an exterior surface to facilitate desired angular adjustment of the body, and thus the light. Preferably, the body comprises a top portion and a bottom portion, which contains the serrations. The base portion is pivotally connected to the body at two points, and has pivot stops therein to adjust the body angularly as desired. Preferably, the base portion is affixable to a head gear. The lamp is removably attached to the body, and selectively connected to the battery to cause the lamp to emanate light.

The pivot connection between the base portion and the body allows a low profile positioning of the lamp with respect

**2**

to a user's desired line of lighted vision. The pivot connection allows for 180 degree angular adjustment of the body and lamp with respect to the base portion. The pivot stops located on the base portion also allow for 180 degree angular adjustment of the body with respect to the base portion. This is achieved when the pivot stops mate with the serrated edges on the body.

In another aspect of the invention, a flashlight having improved switching and focusing features is disclosed. Here, the portable, battery-operated flashlight takes the form of a long-handled flashlight which construction allows variation in the ability to focus and defocus the lamp's light. The flashlight comprises a body, lamp, head assembly and switching assembly. The body retains at least one battery. The lamp, which is removably attached to the body, is selectively connected to the battery to cause the lamp to emanate light. The switching assembly is movable relative to the head assembly such that axial movement of the switching assembly causes electrical coupling of the lamp with the battery and causes a position of the lamp to vary to focus and defocus the light.

The head assembly comprises a bezel that is capable of radial movement to cause the switching assembly to move axially. In this regard, the switching assembly includes a first spring located most adjacent to the battery, and a second spring located most adjacent to the reflector. As the switching assembly moves axially, the first spring is caused to compress first to cause electrical coupling of the lamp with the battery. Once the switch assembly makes electrical contact with the battery, the second spring compresses to cause the position of the lamp to vary within the reflector to cause focusing and defocusing of the light emanating from the lamp.

With these and other advantages and features of the invention that may become hereinafter apparent, the nature of the invention may be more clearly understood by reference to the following detailed description of the invention, the appended claims and to the several drawings attached herein.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a perspective front view of a head worn flashlight in accordance with an exemplary embodiment of the present invention.

FIG. **2** is a close up view of a preferred embodiment of the serrations on the body.

FIG. **3** is a close up view of a preferred embodiment of the pivot stop on the base.

FIG. **4** is an exploded view of the pivot connection in accordance with the present invention.

FIG. **5** is another view of the flashlight of the present invention.

FIG. **6** is a view showing the removed body of the flashlight.

FIG. **7** is cross-sectional front view of a long-handled flashlight (without bezel) showing readiness of the reflector to move in the direction towards the batteries.

FIG. **8** is cross-sectional front view of a long-handled flashlight (with bezel) showing readiness of the reflector to move in the direction towards the batteries.

FIG. **9** is a cross-sectional front view of the flashlight of FIG. **7** showing the switching assembly is in the "on" position.

FIG. **10** is a cross-sectional front view of the flashlight of FIG. **8** showing the switching assembly is in the "on" position.

FIG. **11** is a cross-sectional front view of the flashlight of FIG. **9** showing compression of the second spring.

Exhibit 3
Page 17

3

FIG. **12** is a cross-sectional front view of the flashlight of FIG. **8** showing compression of the second spring.

## DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

Referring now to the figures, wherein like reference numerals indicate like elements, in FIG. **1** there is shown a perspective front view of a head worn flashlight **10** in accordance with an exemplary embodiment of the present invention. As depicted, flashlight **10** is shown as having a head assembly **12**, a body **14** and a base **16**, which may serve as an attachment portion. The head assembly **12** and body **14** generally comprise the head light **20**.

The head assembly **12** comprises a bezel **13**, a switch assembly (not shown), a lamp (not shown), reflector (not shown) and lens **15**. In this embodiment, the bezel **13** is capable of radial movement (i.e., rotation) to cause the switch to selectively connect the lamp to the one or more batteries, and therefore cause the lamp to emanate light. Further, the bezel **13** is capable of radial movement to cause focusing and defocusing of light from the lamp. The reflector directs light from the lamp through the lens. The head light **20** of the flashlight **10** is assembled by attaching the head assembly **12** and switch assembly to the body **14**, such that the lamp is positioned in the switch assembly and is in alignment with the reflector via an opening in the reflector. The head assembly **12** is removably attached to the body **14**.

The body **14** serves as a chamber for holding one or more batteries in a series arrangement. The body **14** comprises a top portion **24** and a bottom portion **26**. The top portion **24** is removably attached to the bottom portion **26** to selectively uncover the interior portion of the body **14** to allow, among other things, the one or more batteries to be inserted or removed. Referring to FIGS. **1** and **2**, the body **14** also includes, in a mid-region of the bottom portion **26**, serrations **28** on an exterior surface of the body **14** for engaging a surface **30** of the base **16**. A close-up view of a preferred embodiment of serrations **28** is shown in FIG. **2**. Serrations **28** facilitate desired angular adjustment of the body **14** and head assembly **12** with respect to the base **16**. This is accomplished when serrations **28** mate with the pivot stop **29** located on base **16**, as shown in FIG. **3**.

In general, movement of the body **14** is achieved by two pivot connection points **22** at each end of the body **14** to the base **16**. The substantially flat, arched undersurface (not shown) of the base **16** facilitates standing of the flashlight **10** on a flat surface. It also facilitates attachment of the base **16** to a curved surface object, such as head gear, or placement directly on a human forehead. In this regard, attachment of the flashlight **10** to a safety helmet, for example, allows desired positioning of the direction of the light emanating from the lamp while providing more stability. Another advantage of the attachment feature of base **16** is hands free use of the flashlight **10**.

In the embodiment depicted, the base **16** is rectangular in shape and has an arm **32** projecting from each base end. A distal end **34** of the arm **32** is the location area of the pivot point **22** connecting the body **14** to the base **16**. As shown in FIG. **4**, screw **21** engages nut **23** to form pivot point **22**. As shown in FIG. **5**, use of the serrations **28** in conjunction with pivot point **22** allows for 180 degree angular adjustment of the body **14**, and consequently the head light **12**, with respect to the base **16**. Additionally, when the flashlight **10** is used as a head lamp, the pivot point **22** allows the body **14** to maintain contact with the base **16**.

4

Referring now to FIG. **6**, there is shown a view of the flashlight showing removal of the body **14** casing, which covered the batteries **40**. In the embodiment depicted, the two batteries **40** are exposed to illustrate that the pivot point **22** is spatially located at a distance **100** from the plane that intersects a center point of each battery. In this regard, the pivot point **22** is located between the batteries and the head assembly **12**. Preferably, the pivot point **22** is located substantially along the tangent plane **41** of the two batteries **40**. This advantageously facilitates the balanced positioning of the head assembly **12** and comfort for a user wearing the device.

Referring now to FIGS. **7-12**, there is shown a long-handled flashlight having improved switching and focusing features in accordance with another embodiment of the present invention. It is important to note that the improved switching and focusing features described below and shown in FIGS. **7-12** are applicable to the head light **20** described above and shown in FIGS. **1-6**. As depicted, the flashlight is shown as having a head assembly **62**, a body **64** and a switching assembly **65**. The head assembly **62** comprises a lamp **68**, a reflector **70**, a bezel **72**, and a lens **73**. The switching assembly **65** includes a first spring **66**, a second spring **74**, a first electrical contact **80** and a second electrical contact **82**. The lamp **68** (partially shown) includes a first pin **84** that contacts the first electrical contact **80** and a second pin **86** that contacts the second electrical contact **82**. The second pin **86** is electrically connected to the first spring **66** that is in electrical contact with one of the batteries **76**. The body **64** includes a chamber contact **88** that runs the length of the body **64** and is capable of electrical connection to batteries **76** located within the body **64**. A description of the switching, focusing and defocusing aspects of the flashlight is explained below with reference to FIGS. **7-12**.

Referring now to FIGS. **7** and **8**, the flashlight is shown in the "off" position. In this position, the switching assembly **65** is permitted to move towards and away from the body **64** (i.e. axially). Axial movement of the switching assembly **65** is achieved by radial movement of the bezel **72**. In this regard, the bezel **72** is capable of radial movement that causes the bezel **72** to move axially towards the battery **76**. The bezel **72** is in contact with the reflector **70**, and the reflector is in contact with the second spring **74**. As a result of radial movement of the bezel **72**, the reflector **70** moves axially towards the battery **76**.

Referring now to FIGS. **9** and **10**, the flashlight is shown in the "on" position. Noteworthy is the collapsed position of the first spring **66**. The second spring **74** is not collapsed. This is accomplished by turning or rotating the bezel **72**. As the bezel is rotated, the reflector **70** is caused to move axially towards the battery **76**. The compression force of the first spring **66** and the second spring **74** are selected to allow the first spring **66** to substantially collapse before the second spring **74**. As a result, as the bezel **72** is rotated, the reflector **70** exerts a downward axial compressive force, causing the first spring **66** only to collapse. At this juncture, the second spring **74** does not collapse during this movement and, as a result, the reflector **70** and the switching assembly move together towards the batteries **76**. The compression of the first spring **66** causes the lamp **68** to turn on because an electrical connection is made with the batteries **76**. In this regard, the first electrical contact **80** contacts the chamber contact **88** causing a completion of the electrical connection between the first pin **84** and second pin **86** and the batteries **76**.

Referring now to FIGS. **11** and **12**, there is shown the collapsed position of both the first spring **66** and the second spring **74**. When the first electrical contact **80** contacts the chamber contact **88**, and the bezel continues to rotate, further

US 7,410,272 B2

| 5 | 6 |

movement of the reflector **70** exerts additional compressive forces in the direction of the batteries **76**, causing the second spring **74** to collapse. As a consequence, the reflector **70** is caused to move relative to the lamp **68** and the switching assembly. In other words, the practical effect of this condition is that the position of the lamp **68** within the reflector **70** can be varied as desired to focus or defocus the light from the lamp **68** through the lens **73**, depending on where the lamp **68** is positioned within the reflector **70**.

The head portion of the flashlight can be disassembled by rotating the bezel **72** from the "off" position in a direction opposite to the first rotation direction, thereby disengaging the second spring **74** and then the first spring **66** from electrical contact.

The foregoing description of the present invention has been presented for purposes of illustration and description. The description is not intended to limit the invention to the form disclosed herein. Consequently, the invention and modifications commensurate with the above teachings and skill and knowledge of the relevant art are within the scope of the present invention. It is intended that the appended claims be construed to include all alternative embodiments as permitted by the prior art.

What is claimed is:

**1**. A lighting apparatus, comprising:

a body for retaining at least one battery, said body having a plurality of serrations;

a base attached to said body by at least one pivot connection point, said base having a stop; and

a light source, housed within said body, and selectively electrically connected to said at least one battery to cause said light source to emanate light;

wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source.

**2**. A lighting apparatus, comprising:

a power supply;

a body having a plurality of serrations;

a base attached to said body by at least one pivot connection point, said base having a stop; and

a light source, attached to said body, and selectively electrically connected to said power supply to cause said light source to emanate light;

wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source.

**3**. A lighting apparatus, comprising:

a body for retaining at least one battery;

a light source;

a head capable of housing said light source, wherein said head is removably attached to said body and movement thereof selectively electrically connects said light source with said at least one battery; and

a base, connected to said body, wherein at least one point of connection between said base and said body is located substantially between said at least one battery and said head to facilitate the balanced position of said head.

**4**. A lighting apparatus, comprising:

a body for retaining at least one battery;

a light source;

a reflector;

a head for retaining said reflector and said light source;

wherein said light source is capable of being selectively electrically connected to said at least one battery to cause said light source to emit light;

wherein axial movement of said head toward said body is capable of causing axial movement of said reflector together with said light source; and

wherein further axial movement of said head toward said body is capable of causing axial movement of said reflector relative to said light source.

**5**. A lighting apparatus, comprising:

a body for retaining at least one battery;

a light source;

a reflector; and

a head for retaining said reflector and said light source;

wherein said light source is capable of being selectively electrically connected to said at least one battery to cause said light source to emit light;

wherein axial movement of said reflector toward said body is capable of causing axial movement of said reflector together with said light source; and

wherein further axial movement of said reflector toward said body is capable of causing axial movement of said reflector relative to said light source.

**6**. The lighting apparatus according to claim **5**, wherein said head comprises a bezel and rotation of said bezel is capable of causing axial movement of said reflector toward said body.

**7**. A lighting apparatus including a switch assembly, comprising:

a reflector having a central opening;

a light source capable of protruding through the central opening of said reflector;

a first spring electrically connected to said light source, wherein compression of said first spring causes axial movement of said reflector together with said light source;

a second spring mechanically connected to said reflector, wherein compression of said second spring causes axial movement of said reflector relative to said light source; and

wherein said second spring has a greater resistance to compression than said first spring.

\*    \*    \*    \*    \*

Exhibit 1
Page 19

# EXHIBIT 2

1

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4    MAG INSTRUMENT, INC.,            )
                                      )
5                  Plaintiff,         ) CV 09-01842-R(OPx)
                                      )
6            -vs-                     )
                                      )
7    THE COLEMAN COMPANY, INC.,       )
                                      )
8                  Defendant.         )

9

10

11

          DEPOSITION OF CHRISTOPHER LEE HALASZ
12
                    Tucson, Arizona
13
                  December 29, 2009
14
                    10:30 a.m.
15

16

17

18

19

20

21

22

23       CINDY J. SHEARMAN, RMR, CRR, CR #50718 (AZ)
              EATON, GREEN & WILLIAMS, INC.
24               549 N. Sixth Avenue
              Tucson, Arizona 85705
25         (520) 623-0593  (800) 759-9022


              EATON, GREEN & WILLIAMS, INC.
              520.623.0593      800.759.9022

EXHIBIT  2
PAGE    20

3

1    APPEARANCES:

2

          FOR THE PLAINTIFF:
3
               JONES DAY
4              BY: JERROLD B. REILLY, ESQ.
               555 South Flower Street, Fiftieth Floor
5              Los Angeles, California 90071-2300

6

          FOR THE DEFENDANT:
7
               KAYE SCHOLER, LLP
8              BY: ATON ARBISSER, ESQ.
               1999 Avenue of the Stars, Suite 1700
9              Los Angeles, California 90067-6048

10

11                        *    *    *    *

12

13

14        BE IT REMEMBERED that the deposition of

15   CHRISTOPHER LEE HALASZ was taken at the offices of

16   Eaton, Green & Williams, 549 N. Sixth Avenue, in the

17   City of Tucson, County of Pima, State of Arizona,

18   before Cindy J. Shearman, a Certified Reporter for the

19   State of Arizona, on the 29th day of December, 2009,

20   commencing at the hour of 10:30 a.m., on said day, on

21   behalf of the defendants in a certain cause now pending

22   in the United States District Court for the Central

23   District of California.

24                        * * * * *

25

                    EATON, GREEN & WILLIAMS, INC.
                    520.623.0593      800.759.9022

EXHIBIT   2
PAGE   21

10

1        Q     Okay, great.  All right.  So let's go

2   back and just catch some background here.  If you could

3   tell us your post high school education.

4        A     I have a degree in physics from the

5   University of California, Santa Cruz.

6        Q     Great.  And any graduate work?

7        A     No.

8        Q     Okay.  Any other education?

9        A     I'll add I'm in a graduate program now,

10   so --

11        Q     Okay.  As a general matter, I'm going to

12   be asking about events while you were either at Mag or

13   at Bison, so anything that post dates that --

14        A     Okay.

15        Q     -- unless we specifically ask about it,

16   I think you don't need to any further get into that

17   issue.

18        A     Then, no.

19        Q     Okay.  You know, I understand that

20   there's certain things that you're sensitive about

21   here.  One of the things you were concerned about was

22   not having videotape 'cause of concern that videotape

23   could be misused in some way to embarrass you or

24   otherwise, and we're certainly respectful of that.

25        A     I appreciate that.

EATON, GREEN & WILLIAMS, INC.
520.623.0593        800.759.9022

EXHIBIT  2
PAGE     22

11

1          Q    And, you know, we certainly have no

2    interest at all in invading your privacy and what

3    you're currently doing or activities that you're

4    involved with that have nothing to do with this

5    litigation, so if at any point there's something that

6    you feel is, you know, getting into areas that aren't

7    related to the lawsuit and are personal to you, just

8    let us know and I certainly will back off.  I assume

9    Mr. Reilly will do so as well.

10          A    Thank you.

11          Q    Okay.  So, okay.  So after -- when did

12   you get your degree at UC Santa Cruz?

13          A    1987.

14          Q    Okay.  And from 1987 through, let's say,

15   2002, so over that 15-year period of time, did you do

16   any additional coursework involving mechanical

17   engineering?

18          A    Did I attend any courses, no.

19          Q    Okay.

20          A    If that's the question.

21          Q    Right.  Okay.  And when you graduated

22   from UC Santa Cruz, what did you do next?

23          A    I -- I think within about six -- I did

24   some woodworking, and then within about six months I --

25   something like that, I began working at Mag.

EATON, GREEN & WILLIAMS, INC.
520.623.0593      800.759.9022

EXHIBIT __2__
PAGE   __23__

12

1          Q     Okay.  And what was your original

2     position at Mag?

3          A     I don't know.

4          Q     What kind of work did you do when you

5     got to Mag?

6          A     I did some work with lamp -- some R&D

7     work I guess you would call it.

8          Q     Okay.  And R&D you mean research and

9     development?

10          A     Mm-hmm.

11          Q     And how long did you stay at Mag, about?

12          A     Seven years, I'm going to guess,

13     something on that order.

14          Q     Okay.

15          A     I think it was closer to six, not that

16     it's critical.  I'm sure Mag can inform you of that.

17          Q     I don't think it's that critical.  How

18     did you come to work at Mag?

19          A     I don't know.  What -- can you be more

20     specific?

21          Q     The jury's going to have no idea about

22     your relationship to Mag, so I just wanted to give them

23     a few sentences that, you know, so they get some

24     idea --

25          A     Mr. and Mrs. Maglica asked me to come

EXHIBIT    2
PAGE       24

13

1       work at Mag.

2               Q       Okay.

3               A       And I conceded after a time.

4               Q       Okay.

5               A       Okay?

6               Q       And when you refer to Mrs. Maglica,

7       that's your mother?

8               A       That's correct.

9               Q       Okay.  Okay.  And Mag was in the

10      flashlight business at that time, correct?

11              A       Yes.

12              Q       And you did work on flashlights at that

13      time, correct?

14              A       Yes.

15              Q       And were you involved in the design of

16      flashlights while you were at Mag?

17              A       I don't know if that can be broadly

18      misinterpreted, so can you be more specific?

19              Q       Okay.

20              A       I mean --

21              Q       Go ahead.

22              A       Please be more specific.

23              Q       Did you do any technical drawing related

24      to possible new flashlights?

25              A       How would -- how would someone practiced

EATON, GREEN & WILLIAMS, INC.
520.623.0593       800.759.9022

EXHIBIT  2
PAGE     25

19

```
 1     Bison.
 2            Q     Okay.  And what is or what was Bison?
 3            A     Bison Sportlight.  That was a company my
 4     brother and I started to -- started out as an optical
 5     design and then we went on to design a flashlight.
 6            Q     Okay.  And when did you and your brother
 7     start Bison?
 8            A     I don't know.  I don't know what would
 9     define as start.  I mean, when we formally incorporated
10     or when we just started working on the design?  It
11     could -- I'm not sure.
12            Q     Can you give me a range of years?
13            A     1994, 1995.
14            Q     Okay.  And Bison was your primary
15     employment for a number of years thereafter?
16            A     Yes.
17            Q     Okay.  And when did you stop working for
18     Bison?
19            A     I think it was 2002.
20            Q     Okay.
21            A     But it may have been later.
22            Q     And --
23            A     Or --
24            Q     I'm sorry?
25            A     I think I stopped receiving any money
```

EATON, GREEN & WILLIAMS, INC.
520.623.0593        800.759.9022

EXHIBIT    2
PAGE       26

23

BY MR. ARBISSER:

1

2          Q    Okay.  And, Mr. Halasz, if you could

3     take a look at Exhibit 14.  And at the -- on the third

4     page, there is a document that is titled Assignment of

5     Patents, okay?  And if you look at the next page of

6     that document, you see there's a signature on behalf of

7     Bison Sportlight, LLC?

8          A    Yes.

9          Q    And do you recognize the signature on

10    that document?

11         A    It looks like my brother's signature.

12         Q    Okay.  And your brother is Steven

13    Halasz?

14         A    Yes.

15         Q    Okay.  And you see this is dated the

16    17th day of December, 2002?

17         A    I see one 18 December, I see one

18    17 December.

19         Q    Yeah, so there's some disagreement about

20    what date it was, but sometime in December --

21         A    Right.

22         Q    -- 2002?

23         A    Right.

24         Q    And is that about the time that you

25    recall being involved in an assignment of patents and

EATON, GREEN & WILLIAMS, INC.
520.623.0593      800.759.9022

EXHIBIT    2
PAGE      27

24

```
 1    other intellectual property to Mag?

 2            A    Sure.

 3            Q    Okay.

 4            A    Roughly, yeah, sure.

 5            Q    Okay.  And prior to the -- this

 6    assignment, if you go back a little bit further in this

 7    document, at page 144, it looks like the

 8    next-to-the-last page, okay?

 9            A    Okay.

10            Q    There is something at the top that says

11    nunc pro tunc assignment.  Do you see that?

12            A    Yes.

13            Q    Okay.  And there's a document there that

14    has your signature at the bottom, right?

15            A    Yes.

16            Q    And it's dated October 12th, 2001?

17            A    Yes.

18            Q    Okay.  And there is, at the very top, it

19    says that you've invented a certain new and useful

20    invention entitled improved flashlight for which an

21    application for letters patent of the United States

22    under application number, and there's a number, says

23    application being identified in attorney file number,

24    and there's another number, right?

25            A    Yes.
```

EXHIBIT __2__

PAGE __28__

27

```
 1              (Deposition Exhibit No. 15 was marked for

 2      identification.)

 3      BY MR. ARBISSER:

 4              Q    Okay.  And while you were at Bison

 5      Sportlight, did Bison have a web page?

 6              A    Yes.

 7              Q    Okay.  And did Bison advertise its

 8      products on its web page?

 9              A    Yes.

10              Q    Okay.  And taking a look at Exhibit 15,

11      does this look like one of the pages from Bison's web

12      page or website?

13              A    This could be, yes.

14              Q    Okay.  Do these look like the products

15      that Bison was making?

16              A    Yes.

17              Q    Okay.  And the product on the left,

18      that's a headlamp, right?

19              A    Yes.

20              Q    And Bison made that headlamp?

21              A    Yes.

22              Q    Okay.  And was it your understanding

23      that that headlamp was the subject of a patent

24      application that had been filed with you as the

25      inventor?
```

EATON, GREEN & WILLIAMS, INC.
520.623.0593        800.759.9022

EXHIBIT _2_
PAGE   _29_

28

```
1          A    Yes.
2          Q    Okay.  Is that headlamp -- when was the
3     last time that headlamp was made?
4          A    I don't know.
5          Q    Was it approximately 2002, 2003?
6          A    I don't know.
7          Q    When Bison shut down, did anybody
8     continue to make the headlamp?
9          A    I don't know.
10          Q    During the entire time that Bison was
11    operating -- well, at the time that Bison shut down,
12    was it still making the headlamp?
13          A    I don't know.
14          Q    I appreciate that.
15          A    I mean, to my --
16          Q    You don't need to apologize for being --
17          A    To my knowledge.
18          Q    Okay.
19          A    I mean, to my knowledge, following the
20    litigation with Mag, we ceased to produce the -- any of
21    the lights using light bulbs and incandescent lamps, to
22    my knowledge.
23          Q    Okay.  And that was sometime before
24    Bison shut down?
25          A    Yes.
```

EATON, GREEN & WILLIAMS, INC.
520.623.0593      800.759.9022

EXHIBIT 2
PAGE 30

31

```
 1      tooling other than the molds.

 2              Q     Okay.  Where was the headlamp made?

 3              A     In Colorado.

 4              Q     Okay.

 5              A     Well --

 6              Q     It was assembled in Colorado?

 7              A     It was assembled in Colorado.

 8              Q     Okay.  And parts came from various parts

 9      of the world?

10              A     Well, various parts of the US, I think.

11      I can't -- I think we had had some limited molding done

12      in California, but maybe not with the headlamp, maybe

13      they were all done in Colorado.

14              Q     Okay.

15              A     The lamps, I can't remember where they

16      were from.

17              Q     Do you know when the headlamp first went

18      on sale?

19              A     No.

20              Q     The -- it was a number of years, though,

21      after Bison had started before the headlamp was put on

22      sale?

23              A     Yes.

24              Q     Okay.  And we'll see in a moment that

25      there was a provisional application for a patent that
```

EATON, GREEN & WILLIAMS, INC.
520.623.0593      800.759.9022

EXHIBIT   2
PAGE      31

35

1          Q     Okay.  Have you spoken to anyone else

2     about this case other than discussions you may have had

3     with an attorney?

4          A     To my wife.

5          Q     Okay.  Broadening out a little bit and

6     talking about the patents or the patent process

7     involving the headlamp, have you, since approximately

8     December of 2002 when the intellectual property was

9     turned over from Bison to Mag, spoken to anyone on

10     behalf of Mag relating to those patents or patent

11     applications?

12          A     I can't recall any such conversation.

13          Q     Okay.  Let me go back to the time when

14     you first began thinking about a headlamp.  Had you

15     done any work on a headlamp design prior to leaving

16     Mag?

17          A     I don't recall.

18          Q     Okay.  While you were at Mag, did Mag

19     have any headlamp products?

20          A     I don't know.

21          Q     You were not involved with any headlamp

22     products at Mag to the best of your recollection?

23          A     No.

24          Q     Okay.  And after you and your brother

25     had started Bison, do you recall when you began to

EXHIBIT   2

PAGE   32

36

1     think about a headlamp product?

2             A    Not specifically, no.

3             Q    Do you recall what got you interested in

4     headlamp products?

5             A    No.

6             Q    Okay.  Did you -- did you personally

7     participate in activities where you used headlamps?

8             A    Yes.

9             Q    Okay.  And what kind of activities were

10    you engaged in while you were at Bison that involved

11    the use of a headlamp?

12            A    Just general camping, hunting with my

13    brother.

14            Q    Okay.  And you found headlamps useful in

15    camping and in hunting?

16            A    Yes.

17            Q    Okay.  And you had some ideas about

18    improvements that could be made to headlamps that were

19    already on the market?

20            A    Yes.

21            Q    Okay.  Did you, in that process, take a

22    look at other headlamps that were on the market at that

23    time?

24            A    I owned other headlamps that were on the

25    market.

EXHIBIT    2
PAGE       33

37

1          Q     Okay.  What headlamps, do you recall?

2          A     Petzl.

3          Q     Okay.  Do you know which Petzl model --

4          A     No.

5          Q     -- you were familiar with?

6          A     (The witness shook his head.)

7          Q     Can you describe generally what the

8    design of that headlamp was?

9          A     Not of any value.

10         Q     Okay.

11         A     It had a lamp and reflector.  The lamp

12   was engaged by turning the reflector housing.  It was

13   plastic with an elastic headband.

14         Q     Did the headlamp have an angular

15   adjustment of any kind?

16         A     Yes.

17         Q     Do you recall what the mechanism --

18         A     I think it did.

19         Q     Do you recall what the -- strike that

20   question.  I'll ask a new one.

21         Okay.  Do you recall what the mechanism of

22   angular adjustment was in the Petzl headlamp that you

23   had?

24         A     No.

25         Q     Okay.  Other than the Petzl headlamp

EATON, GREEN & WILLIAMS, INC.
520.623.0593      800.759.9022

EXHIBIT  2
PAGE  34

39

```
 1          Q     Are you familiar with a Princeton Tec

 2     Lights?

 3          A     Yes.

 4          Q     And from shopping for headlamps, had you

 5     seen Princeton Tec headlamps at outfitting stores or

 6     sporting goods stores?

 7                MR. REILLY:  Objection, vague as to

 8     time.

 9     BY MR. ARBISSER:

10          Q     This is all prior to the invention of

11     the Bison headlamp.

12          A     I can't recall.  I can't recall.

13          Q     Okay.  During the designing of the Bison

14     headlamp, did you go out and look at headlamps that

15     other companies were making?

16          A     I'm not sure how to answer the question.

17     We had -- I had purchased other headlamps prior to

18     designing this and used other headlamps, so in that

19     sense, yes, I had gone out and looked at other

20     headlamps.

21          Q     Okay.  Did you look at any of the

22     marketing literature for other headlamps prior to

23     designing the Bison headlamp?

24          A     I don't recall.

25          Q     Okay.  Were you involved at all in
```

EXHIBIT  2
PAGE  35

40

1    marketing of the Bison headlamp after the Bison

2    headlamp was on the market?

3            A    I may have been, but to what degree, I

4    don't recall.

5            Q    Okay.  Let me show you some headlamps --

6            A    Okay.

7            Q    -- and ask you if you recognize these.

8    We have some photos that have previously been marked

9    because the physical headlamps are not going to get

10    attached to the deposition, but let me give you -- this

11    is what's been -- what I call the Petzl micro.  Let me

12    mark as -- well, let me just -- this has previously

13    been marked as Exhibit 7.

14            MR. REILLY:  Let me object to this line

15    of questioning on the grounds that these items you're

16    now showing to the witness have not been produced in

17    the lawsuit.

18            MR. ARBISSER:  Okay.

19    BY MR. ARBISSER:

20            Q    So, he's made his objection for the

21    record.  Does that -- are you familiar with that

22    headlamp?

23            A    This brand or this model of Petzl looks

24    familiar.

25            Q    Okay.  Do you know whether that's the

EATON, GREEN & WILLIAMS, INC.
520.623.0593        800.759.9022

EXHIBIT  2
PAGE  36

41

1    model that you had prior to designing the Bison

2    headlamp?

3           A    No, I don't.

4           Q    Okay.

5           A    I have owned one of these; I may still

6    own one of these.

7           Q    Okay.  Do you know when you acquired the

8    one that you currently own?

9           A    No.

10          Q    Okay.  That one actually is a vintage

11   model.  This is what I actually previously --

12               MR. REILLY:  Before you put that away,

13   may I look at it?

14               MR. ARBISSER:  Sure.

15               MR. REILLY:  I've never seen it before.

16               MR. ARBISSER:  Okay.

17               MR. REILLY:  And I renew my objection to

18   this next item that you're showing.

19   BY MR. ARBISSER:

20          Q    Okay.  So this is the Petzl micro that

21   I'm now showing you, and this exhibit -- that was an

22   earlier version of the micro.

23               MR. REILLY:  Just so we have a record of

24   this, Counsel, the first Petzl micro you showed him,

25   are you representing that that's depicted in the

EATON, GREEN & WILLIAMS, INC.
520.623.0593      800.759.9022

EXHIBIT 2
PAGE 37

43

```
 1            MR. ARBISSER:  I'm simply asking him to
 2     confirm that these photographs appear to him to be
 3     photographs of the Petzl micro with a black headband
 4     and the box that it came in.
 5            MR. REILLY:  I object to the question
 6     for lack of foundation.  It's not been shown that this
 7     witness took these photographs or was present or knows
 8     what they are.  I don't see how he can possibly know
 9     the answer to what you're asking him.
10            MR. ARBISSER:  I'm just asking him to
11     look at the photographs and tell me whether these
12     appear to be photographs of this headlamp and this box.
13            MR. REILLY:  Same objection.
14            THE WITNESS:  The photographs are
15     representative of the box and the headlamp.  Whether
16     they are of the same, I don't know.
17     BY MR. ARBISSER:
18            Q    Okay.  And now just taking a look at the
19     Petzl headlamp with a black -- the Petzl micro with a
20     black headband, I just want to confirm again that that
21     is a model of Petzl headlamp that you're familiar with,
22     that you may have owned; is that correct?
23            A    Yes.
24            Q    Okay.
25            A    And, for the record, the headlamp -- the
```

EXHIBIT 2
PAGE 38

44

1    headband is black and gray.

2           Q    Okay.  I appreciate the clarification.

3    Let me -- oh, just for the record, the Petzl micro has

4    a mechanism for angular adjustment, correct?

5           A    Yes.

6           Q    Okay.  And that mechanism has serrations

7    and a stop?

8           A    Yes.

9           Q    Okay.  And the serrations are on the

10   body?

11               MR. REILLY:  Object to the form of the

12   question as vague, lacking foundation.

13               THE WITNESS:  The serrations are on the

14   body?  I'm not sure what defines the body, but there

15   are serrations on the mechanism.

16   BY MR. ARBISSER:

17          Q    Okay.  What you're holding now in your

18   hand, the base -- we'll call the base the part that

19   connects to the strap, okay?

20          A    (The witness nodded.)

21          Q    And the portion that has the lamp and

22   the batteries, we'll refer to that as the body, okay?

23          A    Okay.

24          Q    Are the serrations on the body?

25          A    I'd have to take it apart to really be

EATON, GREEN & WILLIAMS, INC.
520.623.0593        800.759.9022

EXHIBIT  2
PAGE  39

45

1    sure of that.

2              Q    Okay.

3              A    But they appear so by the way it's

4    assembled.  Do you want me to take it apart?

5              Q    No, you don't need to do that, thanks.

6    And the -- just looking at the bottom, can you see that

7    the stop is on the base?

8              MR. REILLY:  Objection to the form of

9    the question, vague and ambiguous and lacking

10   reference.

11             THE WITNESS:  There's a -- an interface

12   with the stop on the base.

13   BY MR. ARBISSER:

14             Q    Okay.  Thank you.

15             A    Yep.

16             MR. REILLY:  Could I have that answer

17   read back, please?

18             THE WITNESS:  In fact, I'd like to --

19   there's an interface with the mechanism on the base.  I

20   first said there's an interface with the stop on the

21   base, which is circular.  There's an interface with the

22   mechanism on the base.

23             MR. REILLY:  Oh, all right, fine.  I

24   don't need it read back.

25             MR. ARBISSER:  Do you need to look at

EXHIBIT    2
PAGE    40

47

1           Q    Okay.  Let's just put that away then.

2    All right.  Were you involved in the applications

3    for -- any applications for the patents for what we've

4    called the Bison headlamp?

5           A    Yes.

6           Q    Okay.  Let's mark as the next exhibit in

7    order a provisional application for patent, it looks

8    like it's dated August 10th, 2000.  It has been

9    produced in this litigation as MCO 567 through 576.

10          (Deposition Exhibit No. 16 was marked for

11   identification.)

12   BY MR. ARBISSER:

13          Q    Taking a look at Exhibit 16, are you

14   familiar with this document?

15          A    No.

16          Q    Beginning at page 570, there are some

17   diagrams.  Are you familiar with those diagrams?

18          A    They look familiar.

19          Q    Okay.  And do those appear to be

20   diagrams of what we've been referring to as the Bison

21   sports -- the Bison headlamp, at least through 573?

22          A    Yes.

23          Q    Okay.  And the headlamp that's depicted

24   on 570 to 573 is a headlamp that you designed while at

25   Bison?

EATON, GREEN & WILLIAMS, INC.
520.623.0593      800.759.9022

EXHIBIT  2
PAGE  41

48

1          A    Yes.

2          Q    And you have a general understanding

3     that patents were applied for for the headlamp design?

4          A    Yes.

5          Q    Okay.  Did you have any involvement in

6     drafting the description of the invention in any of

7     those patent applications?

8          A    Yes.

9          Q    Okay.  Take a look at the third page --

10         A    Well, when you say "drafting", I -- it's

11    likely that I read some of the drafts.

12         Q    Okay.

13         A    Whether I created the draft, though, I

14    don't recall.

15         Q    Okay.  So looking at 569, there's a

16    description of invention.  Do you see that?

17         A    Yes.

18         Q    Okay.  And just take a moment to look at

19    that.  Does that refresh your recollection as to

20    whether or not you've previously seen this description

21    of the invention?

22         A    No.

23         Q    Let me mark as the next exhibit in order

24    a three-page document entitled Declaration and Power of

25    Attorney for Patent Application previously produced

EATON, GREEN & WILLIAMS, INC.
520.623.0593      800.759.9022

EXHIBIT   2
PAGE      42

71

1    where Bison's intellectual property was assigned to

2    Mag.  Do you know whether there were any financial

3    terms that were attached specifically to the

4    assignment?

5         A    No, I do not.

6         Q    Do you -- did Bison receive any kind of

7    payment from Mag for the assignment?

8         A    Not that I'm aware of.

9              MR. ARBISSER:  I have no more questions.

10             MR. REILLY:  And I have no further

11   questions.

12             MR. ARBISSER:  Okay.  Before we go off

13   the record, we'd like to give you an opportunity to

14   review and correct the deposition.  The -- what I would

15   suggest is that the original of the deposition be sent

16   to Mr. Halasz.  You can give the court reporter your

17   address; I don't believe it's on the record.  Oh, it's

18   on the subpoena.  And that --

19             THE WITNESS:  You know, can I -- if I

20   could pause it here just to be clear?

21   BY MR. ARBISSER:

22        Q    Sure.

23        A    Your most recent question regarding

24   financial compensation, if that -- that is how I

25   interpreted it.  Just to be clear, my understanding was

EATON, GREEN & WILLIAMS, INC.
520.623.0593      800.759.9022

EXHIBIT  2
PAGE  43

72

1    that the assignment of the intellectual property of the

2    patent to Mag was in some way connected to a settlement

3    of the lawsuit, so if that can be interpreted as such

4    -- but I'm unclear on that.

5              Q    Okay.

6              A    My brother being the one versed in the

7    art handled that.

8              Q    Okay.  So just to be clear then, the

9    assignment to Mag, it's your understanding, was part of

10   the overall resolution of the dispute between Mag and

11   Bison?

12             A    Yes.

13             Q    Okay.  And just to confirm what I

14   thought I was asking, there wasn't, as far as you know,

15   a separate value that was placed in that settlement on

16   the assignment of the intellectual property for the

17   headlamp?  Just asking what you know.

18             A    Yeah, and I'm not clear of what a

19   separate value would entail.  I'm not aware of any

20   financial transaction, okay?

21             Q    That's all I can ask.

22             MR. ARBISSER:  Let me go back to what

23   we're going to do here.  If we send you the transcript,

24   are you going to take time to review it or you don't

25   even want to look at the transcript?

EXHIBIT  2
PAGE  44

75

1    attorneys' eyes only dash technical.

2              MR. ARBISSER:  All right.  Anything else

3    we need to do on the record?

4              MR. REILLY:  I think we're fine.

5              MR. ARBISSER:  Are you fine, Ms. Court

6    reporter?  Okay.  Do you want to do this on the record?

7              THE WITNESS:  On the record.  Does Mag

8    have any intention of deposing me further?

9              MR. REILLY:  Not at this time, no.

10             MR. ARBISSER:  And you have the right

11   under the federal rules to object if they attempt to

12   take a further deposition, so -- and Mr. Reilly

13   obviously may take a different view of that, but that's

14   my understanding.  This should be it for you.

15             MR. REILLY:  Well, again, the witness

16   always has a right to object.  He could have objected

17   to this.  But --

18             MR. ARBISSER:  Well --

19             MR. REILLY:  Well, thank you for your

20   cooperation, Mr. Halasz.

21             (Concluded at 12:45 p.m., December 29, 2009.)

22

23

24                          _____

                            CHRISTOPHER LEE HALASZ
25


                 EATON, GREEN & WILLIAMS, INC.
                 520.623.0593      800.759.9022


EXHIBIT   2
PAGE   45

76

```
 1                    C E R T I F I C A T E

 2    STATE OF ARIZONA)
                      )
 3    COUNTY OF PIMA  )

 4

 5           BE IT KNOWN I took the foregoing deposition;

 6    that I was then and there a Certified Reporter in the

 7    State of Arizona; that by virtue thereof, I was

 8    authorized to administer an oath; that the witness,

 9    CHRISTOPHER LEE HALASZ, before testifying, was duly

10    sworn to testify to the whole truth and nothing but the

11    truth; and the testimony of the witness was reduced to

12    writing under my direction.

13           I DO FURTHER CERTIFY that I am not a relative

14    or attorney of any party or otherwise interested in the

15    events of this action.

16           (X) Pursuant to request, notification was

17    provided that the deposition is available for review

18    and signature.

19           ( ) Deposition review and signature was not

20    requested.

21           Signed and dated this 30th day of December,

22    2009.

23

24                         _____

                           CINDY J. SHEARMAN, RMR, CRR
25                         Certified Reporter,
                           State of Arizona, #50718
```

EATON, GREEN & WILLIAMS, INC.
520.623.0593       800.759.9022

EXHIBIT   2
PAGE   46

# EXHIBIT 3

1   Robert C. Weiss (State Bar No. 39929)
    rcweiss@jonesday.com
2   Charles A. Kertell (State Bar No. 181214)
    cakertell@jonesday.com
3   JONES DAY
    555 South Flower Street, 50th Floor
4   Los Angeles, CA 90071
    Telephone: (213) 489-3939
5   Facsimile: (213) 243-2539

6   Attorneys for Plaintiff
    MAG INSTRUMENT, INC.

7

8

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12   MAG INSTRUMENT, INC.,              Case No. CV 09-1842 R (OPx)

13              Plaintiff,              **MAG INSTRUMENT, INC.'S
                                        OBJECTIONS AND RESPONSES
14        v.                            TO THE COLEMAN COMPANY,
                                        INC.'S FIRST SET OF REQUESTS
15   THE COLEMAN COMPANY, INC.          FOR ADMISSION (NOS. 1-7)**
     and DOES 1-10,
16                                      Hon. Manuel L. Real
                Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

LAI-3052615v1

EXHIBIT   3
PAGE      47

1    Pursuant to Federal Rules of Civil Procedure 26 and 36, Mag Instrument, Inc.
2    ("Mag Instrument") hereby sets forth its objections and responses to the First Set of
3    Requests for Admission (Nos. 1-7) propounded by The Coleman Company, Inc.
4    ("Coleman"), as follows:

5                            **I.  GENERAL OBJECTIONS**

6         1.     Mag Instrument objects to each and every one of Coleman's requests to
7    the extent that they seek information protected by the attorney-client privilege, the
8    attorney work product doctrine, and/or any other applicable privilege, immunity, or
9    other limitation on discovery.  Nothing contained in Mag Instrument's objections
10   and responses to these requests is intended to be, or should be considered as, a
11   waiver of any attorney-client privilege, the protection afforded by the work product
12   doctrine, and/or any other applicable privilege or doctrine of immunity.

13        2.     Mag Instrument objects to each and every one of Coleman's requests to
14   the extent that they seek confidential, trade secret, and/or otherwise proprietary
15   information of Mag Instrument and/or its directors, officers, or employees.  Such
16   information will only be produced in a manner consistent with a Protective Order
17   entered in connection with the above-captioned action, or by other agreement of the
18   parties through their counsel of record.

19        3.     To the extent any of Coleman's requests seek the confidential
20   information of a third party, Mag Instrument objects to the disclosure of such
21   information until it has requested, and received, the consent of the third party to
22   release the information.

23        4.     Mag Instrument objects to each and every one of Coleman's requests to
24   the extent: (1) that they are overly broad and unduly burdensome; (2) that the
25   burden of providing an answer outweighs any marginal relevance; and/or (3) that
26   the information sought is not relevant to any claim or defense of the parties or
27   reasonably calculated to lead to the discovery of admissible evidence.

28

LAI-3052615v1                        - 2 -

EXHIBIT   3
PAGE   48

5.      Mag Instrument objects to each and every one of Coleman's requests to the extent: (1) that they call for information that is obtainable from a more convenient or less burdensome or less expensive source; and/or (2) that they are unreasonably cumulative or duplicative.

6.      Mag Instrument objects to each and every one of Coleman's requests to the extent that they that impose a duty on Mag Instrument to undertake a search for information for which Coleman is equally able to search and locate.

7.      Mag Instrument objects to Coleman's Definition and Instruction Nos. 2 and 4 to the extent they call for information beyond Mag Instrument's possession, custody, and/or control.

8.      Mag Instrument objects to the time and location designated by Coleman for Mag Instrument's responses.  Indeed, given that Coleman only served its requests at 5:00 p.m. on September 14, 2009, its demand that Mag Instrument respond by 9:30 a.m. on October 14, 2009 at the offices of counsel for Coleman is in violation of Federal Rule of Civil Procedure 36(a)(3).  Mag Instrument will serve responses on October 14, 2009 by an allowable service means.

## II.  SPECIFIC OBJECTIONS AND RESPONSES

The General Objections, set forth above, are hereby incorporated by reference into each and every one of the following Specific Objections and Responses as if fully set forth therein.

**REQUEST FOR ADMISSION NO. 1:**

At least until September 1, 2009, Mag Instrument, Inc. has not sold headlamps.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Mag Instrument objects to Request for Admission No. 1 as vague and ambiguous.  For example, the meaning of the term "headlamps" is unclear.  The meaning of the phrase "[a]t least until" is also unclear.  Mag Instrument also objects to this request to the extent it seeks information that is neither relevant to the above-

EXHIBIT   3
PAGE   49

1  captioned action, nor reasonably calculated to lead to the discovery of admissible

2  evidence.  For example, Request for Admission No. 1 is not geographically limited

3  to the United States.  Coleman has failed to define the term "headlamps" and

4  because it has not been defined Mag Instrument can neither admit nor deny Request

5  for Admission No. 1, and therefore denies same.

6  **REQUEST FOR ADMISSION NO. 2:**

7          At least until September 1, 2009, Mag Instrument, Inc. has not sold lighting

8  devices with a body for retaining at least one battery, said body having a plurality

9  of serrations, and a base attached to said body by at least one pivot connection

10  point, said base having a stop.

11  **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

12          Mag Instrument objects to Request for Admission No. 2 as vague and

13  ambiguous.  For example, the meaning of the phrase "[a]t least until" is unclear.

14  Mag Instrument also objects to this request to the extent it seeks information that is

15  neither relevant to the above-captioned action, nor reasonably calculated to lead to

16  the discovery of admissible evidence.  For example, Request for Admission No. 2 is

17  not geographically limited to the United States.  Subject to the above general and

18  specific objections, Mag Instrument responds as follows:  Admitted.

19  **REQUEST FOR ADMISSION NO. 3:**

20          At least until September 1, 2009, Mag Instrument, Inc. has not sold lighting

21  devices with an angular adjustment using serrations and one or more stops.

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

23          Mag Instrument objects to Request for Admission No. 2 as vague and

24  ambiguous.  For example, the meaning of the phrase "an angular adjustment" is

25  unclear.  The meaning of the phrase "[a]t least until" is also unclear.  Mag

26  Instrument also objects to this request to the extent it seeks information that is

27  neither relevant to the above-captioned action, nor reasonably calculated to lead to

28  the discovery of admissible evidence.  For example, Request for Admission No. 3 is

EXHIBIT __3__
PAGE __50__

1   not geographically limited to the United States.  Subject to the above general and

2   specific objections, Mag Instrument responds as follows:  Admitted.

3   **REQUEST FOR ADMISSION NO. 4:**

4       Christopher L. Halasz is not the sole inventor of the '272 PATENT.

5   **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

6       Subject to the above general objections, Mag Instrument responds as follows:

7   Denied.

8   **REQUEST FOR ADMISSION NO. 5:**

9       Mag Instrument, Inc. did not provide to defendant any actual notice of

10   alleged infringement of the '272 PATENT prior to the filing of this lawsuit.

11   **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

12       Mag Instrument objects to Request for Admission No. 5 as vague and

13   ambiguous.  For example, the meaning of the phrase "actual notice of alleged

14   infringement" is unclear.  Subject to the above general and specific objections, Mag

15   Instrument responds as follows:  Mag Instrument first affirmatively notified

16   Coleman that its manufacture, use, importation, offer for sale, and/or sale of the

17   Coleman Max 3AA LED headlamp in the United States infringed Mag Instrument's

18   United States Patent No. 7,410,272 on March 18, 2009 (the filing date of the above-

19   captioned action).  However, Coleman was aware of at least one application in the

20   same patent chain since at least the issue date of United States Patent No. 7,410,272

21   (*i.e.*, August 12, 2008).  Further, discovery has just commenced, and may

22   demonstrate that Coleman had knowledge of United States Patent No. 7,410,272

23   prior to March 18, 2009.

24   **REQUEST FOR ADMISSION NO. 6:**

25       Mag Instrument, Inc. does not mark any products with the '272 PATENT in

26   accordance with 35 U.S.C. §287.

27

28

LAI-3052615v1

- 5 -

EXHIBIT __3__

PAGE __51__

1   **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

2        Mag Instrument objects to Request for Admission No. 6 to the extent it seeks

3   information that is neither relevant to the above-captioned action, nor reasonably

4   calculated to lead to admissible evidence.  For example, Request for Admission No.

5   6 is not limited to the time period prior to the filing of the Complaint in the above-

6   captioned action (*i.e.*, March 18, 2009).  *See*, 35 U.S.C. §287.  Subject to the above

7   general and specific objections, Mag Instrument responds as follows:  Admitted.

8   However, Mag Instrument has not been required to mark any products with United

9   States Patent No. 7,410,272 in accordance with 35 U.S.C. §287.

10   **REQUEST FOR ADMISSION NO. 7:**

11        During the prosecution of the '272 PATENT, YOU did not inform the United

12   States Patent and Trademark Office of any products that were on sale in the United

13   States prior to August 11, 1999 other than those described in the patents YOU

14   identified.

15   **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

16        Mag Instrument objects to Request for Admission No. 7 as argumentative.

17   Mag Instrument also objects to this request as assuming erroneous facts and/or

18   containing erroneous legal conclusions.  In particular, Request for Admission No. 7

19   incorrectly assumes that Mag Instrument was under an obligation to inform the

20   United States Patent and Trademark Office of all products that were on sale in the

21   United States prior to August 11, 1999.  Mag Instrument also objects to this request

22   as seeking information that is neither relevant to the above-captioned action, nor

23   reasonably calculated to lead to the discovery of admissible evidence.  Indeed,

24   Request for Admission No. 7 is intentionally designed to mislead a jury – in that it

25   ignores that Mag Instrument was under no duty to disclose products that were not

26   material to patentability, that were merely cumulative to those already disclosed,

27   and/or that were not known by the limited number of individuals with a duty to

28   disclose information to the United States Patent and Trademark Office.  Before

EXHIBIT   3
PAGE    52

Coleman propounds a request that implies misconduct and that attempts to impugn the reputation of patent practitioners and others, Coleman must plead the basis for such allegations with specificity pursuant to Federal Rule of Civil Procedure 9(b). Subject to the above general and specific objections, Mag Instrument responds as follows:  Mag Instrument informed the United States Patent and Trademark Office of all known art that it was under a duty to disclose.  The art disclosed is clearly identified in the file history.

Dated:  October 13, 2009               JONES DAY

By: _____
Charles A. Kertell

Attorneys for Plaintiff
MAG INSTRUMENT, INC.

EXHIBIT  3
PAGE  53

## PROOF OF SERVICE

I, Trisha Dolman, declare:

I am employed in Los Angeles County, California.  I am over the age of 18 years and not a party to the within-entitled action.  My business address is 555 South Flower Street, 50th Floor, Los Angeles, California 90071.  On October 14, 2009, I served a copy of the attached document, entitled:

**MAG INSTRUMENT, INC.'S OBJECTIONS AND RESPONSES TO THE COLEMAN COMPANY, INC.'S FIRST SET OF REQUESTS FOR ADMISSION (NOS. 1-7)**

☐      by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐      by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☒      by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an agent for delivery.

☐      by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Jonathan Rotter
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 788-1292
Facsimile: (310) 229-1892
E-mail: jrotter@kayescholer.com

Executed on October 14, 2009, at Los Angeles, California.

Trisha Dolman

LAI-3026767v4

EXHIBIT 3
PAGE 54

# EXHIBIT 4

### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/607,259 | 12/01/2006 | Christopher Lee Halasz | 728256-100310 | 9003 |

| 34026          7590          04/24/2007 | EXAMINER |
|---|---|
| JONES DAY | TON, ANABEL |
| 555 SOUTH FLOWER STREET FIFTIETH FLOOR | |
| LOS ANGELES, CA 90071 | ART UNIT · PAPER NUMBER |
| | 2875 |

| SHORTENED STATUTORY PERIOD OF RESPONSE | MAIL DATE | DELIVERY MODE |
|---|---|---|
| 3 MONTHS | 04/24/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

If NO period for reply is specified above, the maximum statutory period will apply and will expire 6 MONTHS from the mailing date of this communication.

EXHIBIT  4
PAGE  55

PTOL-90A  (Rev. 10/06)

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 11/607,259 | HALASZ, CHRISTOPHER LEE |
| | Examiner | Art Unit |
| | Anabel M. Ton | 2875 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>01 December 2006</u>.
2a) ☐ This action is **FINAL**.   2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1-7</u> is/are pending in the application.
    4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☒ Claim(s) <u>4-7</u> is/are allowed.
6) ☒ Claim(s) <u>1-3</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some * c) ☐ None of:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
   ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
   ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

EXHIBIT 4
PAGE 56
MCO 000088

Application/Control Number: 11/607,259

Art Unit: 2875

Page 2

## DETAILED ACTION

### Claim Rejections - 35 USC § 102

1.     The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

2.     Claims 1-3 are rejected under 35 U.S.C. 102(b) as being anticipated by Chen (5,605,394).

3.     Chen discloses a body for retaining at least one battery(10, claim 1), said body having a plurality of serrations(14,141); a base (21) attached to said body by at least one pivot connection point(211), said base having a stop(221; and a light source(col. 2 line 27), attached to said body, and selectively electrically connected to said at least one battery to cause said light source to emanate light(col. 2 lines 8-12); wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source(figs 1-2).

- a power supply(claim 1); a body having a plurality of serrations(10, 14,141); a base attached to said body by at least one pivot connection point( 21,211), said base having a stop(22,221); and a light source(col. 2 lines 8-12), attached to said body, and selectively electrically connected to said power supply to cause said light source to emanate light (col. 2 lines 8-12); wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. (figs 1-2)

EXHIBIT  4

PAGE  57

MCO 000089

Application/Control Number: 11/607,259

Art Unit: 2875

Page 3

- A lighting apparatus, comprising: a body for retaining at least one battery(10); a light source; a head capable of housing said light source(20), wherein said head is removably attached to said body(fig 3) and movement thereof selectively electrically connects said light source with said at least one battery(col. 2 lines 8-12) ; and a base(21), connected to said body, wherein at least one point of connection between said base and said body is located substantially between said at least one battery and said head(132).

### Allowable Subject Matter

4.    Claims 4-7 are allowed.

5.    The following is a statement of reasons for the indication of allowable subject matter:  The prior art cited does not anticipate individually nor teach in combination the following limitations.

EXHIBIT   4
PAGE   58

Application/Control Number: 11/607,259

Art Unit: 2875

Page 4

- a body for retaining at least one battery; a light source; a reflector; and a head for retaining said reflector and said light source; wherein said light source is capable of being selectively electrically connected to said at least one battery to cause said light source to emit light; wherein axial movement of said reflector toward said body is capable of causing axial movement of said reflector together with said light source; and wherein further axial movement of said reflector toward said body is capable of causing axial movement of said reflector relative to said light source said head comprises a bezel and rotation of said bezel is capable of causing axial movement of said reflector toward said body.

- A switch, comprising: a reflector having a central opening; a light source capable of protruding through the central opening of said reflector; a first spring electrically connected to said light source, wherein compression of said first spring causes axial movement of said reflector together with said light source; a second spring mechanically connected to said reflector, wherein compression of said second spring causes axial movement of said reflector relative to said light source; and wherein said second spring has a greater resistance to compression than said first spring.

- A lighting apparatus, comprising: a body for retaining at least one battery; a light source ; a reflector ; a head for retaining said reflector and said light source; wherein said light source is capable of being selectively electrically connected to said at least one battery to cause said light source to emit light ; wherein axial movement of said head toward said body is capable of causing

EXHIBIT __4__
PAGE __59__

MCO 000091

Application/Control Number: 11/607,259                                      Page 5
Art Unit: 2875

axial movement of said reflector together with said light source ; and wherein

further axial movement of said head toward said body is capable of causing axial

movement of said reflector relative to said light source.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Anabel M. Ton whose telephone number is (571) 272-

2382. The examiner can normally be reached on 08:00-16:30.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Sandra O'Shea can be reached on (571) 272-2378. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Anabel M Ton
Examiner
Art Unit 2875

AMT

EXHIBIT   4
PAGE      60

MCO 000092

| *Notice of References Cited* | Application/Control No. 11/607,259 | Applicant(s)/Patent Under Reexamination HALASZ, CHRISTOPHER LEE | |
|---|---|---|---|
| | Examiner Anabel M. Ton | Art Unit 2875 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,126,927 | 06-1992 | Reeves et al. | 362/187 |
| * | B | US-5,605,394 | 02-1997 | Chen, Meng J. | 362/197 |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*Copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    Notice of References Cited              Part of Paper No. 20070416

EXHIBIT  4
PAGE  61

MCO 000093

# EXHIBIT 5

US005605394A

# United States Patent [19]

## Chen

[11] **Patent Number:** 5,605,394

[45] **Date of Patent:** Feb. 25, 1997

[54] **FLASHLIGHT**

[75] Inventor: **Meng J. Chen**, Taichung Hsien, Taiwan

[73] Assignee: **Regitar Power Co., Ltd.**, Taichung Hsien, Taiwan

[21] Appl. No.: **665,847**

[22] Filed: **Jun. 19, 1996**

[51] **Int. Cl.⁶** ..................................................... F21L 7/00

[52] **U.S. Cl.** ......................... 362/197; 362/287; 362/427

[58] **Field of Search** ..................................... 362/197, 199, 362/287, 427, 205

[56] **References Cited**

### U.S. PATENT DOCUMENTS

2,264,284  12/1941  Bassett ................................. 362/197 X
2,349,453  5/1944  Noel ........................................ 362/197
5,161,095  11/1992  Gammache ........................... 362/199 X

*Primary Examiner*—Stephen F. Husar
*Attorney, Agent, or Firm*—Morton J. Rosenberg; David I. Klein

[57]     **ABSTRACT**

A flashlight including an elongated housing having a spherical seat at an upper end thereof and containing a battery, the spherical seat being formed with a plurality of grooves on an inner side thereof, a head assembly pivotally mounted in the spherical seat and including a rotatable head carrying a light bulb, the head being provided with a resilient member at a bottom thereof adapted to engage with the grooves, and means for switching the flashlight on and off, whereby the flashlight can be set to keep illuminating a particular place as desired.

**4 Claims, 5 Drawing Sheets**



EXHIBIT 5
PAGE 62



# FIG. 1

EXHIBIT _5_
PAGE _63_

**U.S. Patent**     Feb. 25, 1997     Sheet 2 of 5     **5,605,394**



F I G. 2

EXHIBIT _5_
PAGE _64_



F I G. 3

EXHIBIT  5
PAGE  65



# FIG. 4

EXHIBIT 5
PAGE 66



FIG. 5

EXHIBIT   5
PAGE   67

5,605,394

# 1

## FLASHLIGHT

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates to a flashlight and in particular to one having a rotatable head which can be kept at a desired orientation.

2. Description of the Prior Art

It has been found that the conventional flashlight includes a casing containing a battery, a head assembly mounted on an upper end of the casing and including a head carrying bulb, and a tail assembly mounted on a lower end of the casing. However, the head of such a flashlight is fixed with respect to the casing thereby making it very inconvenient in use especially in the case of maintaining a motorcycle or a car.

Therefore, it is an object of the present invention to provide an improved flashlight which can obviate and mitigate the above-mentioned drawbacks.

### SUMMARY OF THE INVENTION

This invention relates to an improved flashlight.

It is the primary object of the present invention to provide a flashlight which has a rotatable head.

It is another object of the present invention to provide a flashlight which is convenient to use.

It is still another object of the present invention to provide a flashlight which can be kept at a desired orientation.

It is still another object of the present invention to provide a flashlight which is simple and sturdy in construction.

It is a further object of the present invention to provide a flashlight which is easy and cheap to manufacture.

Other objects of the invention will in part be obvious and in part hereinafter pointed out.

The invention accordingly consists of features of constructions and method, combination of elements, arrangement of parts and steps of the method which will be exemplified in the constructions and method hereinafter disclosed, the scope of the application of which will be indicated in the claims following.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a flashlight according to the present invention;

FIG. 2 is a perspective view of the flashlight with the head arranged at an angular position;

FIG. 3 is an exploded view of the flashlight;

FIG. 4 is a sectional view of the flashlight;

FIG. 5 illustrates the working principle of the present invention.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

For the purpose of promoting an understanding of the principles of the invention, reference will now be made to the embodiment illustrated in the drawings. Specific language will be used to describe same. It will, nevertheless, be understood that no limitation of the scope of the invention is thereby intended, such alterations and further modifications

# 2

in the illustrated device, and such further applications of the principles of the invention as illustrated herein being contemplated as would normally occur to one skilled in the art to which the invention relates.

With reference to the drawings and in particular to FIGS. 1, 2 and 3 thereof, the flashlight according to the present invention mainly comprises an elongated housing 10 and a head assembly 20. The means for switching the flashlight and the socket member mounted in the head assembly 20 for receiving a light bulb may be of any structure well known to those skilled in the art and are not considered a part of the invention. The housing 10 includes a left half 11 and a right half 12 which form a spherical recess 13 at the upper end when joined together. The inner side of the spherical recess 13 is formed with two tubular members 131 at two opposite positions aligned with a diameter of the spherical recess 13. The two tubular members 131 are of different diameters. The spherical recess 13 has an engaging rack 14 along its central portion. The engaging rack 14 includes two columns of grooves 141 and an opening 132 at the lower end of the engaging rack 14.

The head assembly 20 includes a hemispherical member 21, a lens cap (shown but not numbered) threadedly engaged into the hemispherical member 21, an electrical socket (not shown) mounted within the hemispherical member 21, a light bulb (not shown) received in the electrical socket. The hemispherical member 21 is provided with a resilient member 22 at the bottom which tends to engage with the grooves 141 of the housing 10. The resilient member 22 is provided with a protuberance 221 at the central portion thereof and an angular edge 222 at an end thereof. The hemispherical member 21 has a hole 213 at the bottom for the passage of electrical wires (not shown) and the spherical recess 13 has an opening 132 aligned with the hole 213. The hemispherical member 21 is formed with two opposite openings 211 of different diameters which are adapted to receive respective tubular members 131 of the housing 10 so as to prevent the head assembly 20 from wrongly engaging with the housing 10.

When the head assembly 20 is rotated to a certain angular position, the protuberance 221 and the angular edge 222 of the resilient member 22 will engage with respective grooves 141 of the housing 10 thereby fixing the head assembly 20 at a desired orientation and therefore enabling the flashlight to keep illustrating a particular place as desired (see FIGS. 4 and 5).

The invention is naturally not limited in any sense to the particular features specified in the forgoing or to the details of the particular embodiment which has been chosen in order to illustrate the invention. Consideration can be given to all kinds of variants of the particular embodiment which has been described by way of example and of its constituent elements without thereby departing from the scope of the invention. This invention accordingly includes all the means constituting technical equivalents of the means described as well as their combinations.

I claim:

1. A flashlight comprising:

an elongated housing having a spherical seat at an upper end thereof and containing a battery, said spherical seat being formed with a plurality of grooves on an inner side thereof;

EXHIBIT   5
PAGE   68

5,605,394

## 3

a head assembly pivotally mounted in said spherical seat
and including a rotatable head carrying a light bulb,
said head being provided with a resilient member at a
bottom thereof tending to engage with said grooves; 5
and

means for switching said flashlight on and off.

2. The flashlight as claimed in claim 1, wherein said
resilient member is provided with a protuberance at a central 10
portion thereof and an angular edge at an end thereof.

## 4

3. The flashlight as claimed in claim 1, wherein said
spherical recess of said housing is provided with two oppo-
site tubular members of different diameters and said head
has two opposite openings of different diameters adapted to
receive said tubular members.

4. The flashlight as claimed in claim 1, wherein said head
has a hole at a bottom for passage of electrical wires and said
spherical recess has an opening aligned with said hole.

\* \* \* \* \*

EXHIBIT 5
PAGE 69

# EXHIBIT 6

Patent
Attorney Docket: 728256-100310

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

|  |  |  |
|---|---|---|
| In re the Application of: | ) | |
| | ) | **Group Art Unit:** 2875 |
| **Halasz, Christopher Lee** | ) | |
| | ) | **Examiner:** Ton, Anabel M. |
| Serial No.: 11/607,259 | ) | |
| | ) | |
| **Filed:** December 1, 2006 | ) | |
| | ) | |
| **For:** Improved Flashlight | ) | |
| | ) | |

## AMENDMENT AND RESPONSE

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

The Applicant respectfully submits the following Amendment and Response to the Office Action dated April 24, 2007. An Information Disclosure Statement and Form PTO-1449 (six pages) accompany this communication. The Examiner has rejected pending claims 1-3 under 35 U.S.C. §102(b) as being anticipated by United States Patent No. 5,605,394 (Chen). The Examiner has allowed pending claims 4-7. The Applicant respectfully traverses the Examiner's rejection of pending claims 1-3 and submits that all pending claims are in condition for allowance. The **Amendments to the Title/Specification** begin on page 2. The **Amendments to the Claims** begin on page 3. The **Remarks** begin on page 7. The **Conclusion** begins on page 10.

---

CERTIFICATE OF MAILING
(37 C.F.R. § 1.8a)

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as "Express Mail" in an envelope addressed to the Commissioner for Patents, Alexandria, VA 22313-1450.

EV 830117322
Express Mail Label No.

Trisha Dolman
Name of Person Mailing Paper

July 24, 2007
Date of Deposit

_Trisha L Dolman_
Signature of Person Mailing Paper

LAI-2886753v1

EXHIBIT 6
PAGE 70

MCO 000067

Patent
Attorney Docket: 728256-100310

## AMENDMENTS TO THE TITLE/SPECIFICATION

Please replace the title "IMPROVED FLASHLIGHT" with the title "IMPROVED LIGHTING DEVICE" at page 1, line 1 of the specification.

I.      Version Showing Changes:

IMPROVED ~~FLASHLIGHT~~ <u>LIGHTING DEVICE</u>

II.     Clean Version as Amended:

IMPROVED LIGHTING DEVICE

EXHIBIT     6
PAGE       71

MCO 000068

Patent
Attorney Docket: 728256-100310

# AMENDMENTS TO THE CLAIMS

Claim 1 (Currently Amended)

1.     A lighting apparatus, comprising:

a body for retaining at least one battery, said body having a plurality of serrations;

a base attached to said body by at least one pivot connection point, said base having a stop; and

a light source, ~~attached to~~ <u>housed within</u> said body, and selectively electrically connected to said at least one battery to cause said light source to emanate light;

wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source.


Claim 2 (Original)

2.     A lighting apparatus, comprising:

a power supply;

a body having a plurality of serrations;

a base attached to said body by at least one pivot connection point, said base having a stop; and

a light source, attached to said body, and selectively electrically connected to said power supply to cause said light source to emanate light;

wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source.

EXHIBIT  6
PAGE   72

MCO 000069

Patent
Attorney Docket: 728256-100310

Claim 3 (Original)

3.      A lighting apparatus, comprising:

a body for retaining at least one battery;

a light source;

a head capable of housing said light source, wherein said head is removably attached to said body and movement thereof selectively electrically connects said light source with said at least one battery; and

a base, connected to said body, wherein at least one point of connection between said base and said body is located substantially between said at least one battery and said head.


Claim 4 (Original)

4.      A lighting apparatus, comprising:

a body for retaining at least one battery;

a light source;

a reflector;

a head for retaining said reflector and said light source;

wherein said light source is capable of being selectively electrically connected to said at least one battery to cause said light source to emit light;

wherein axial movement of said head toward said body is capable of causing axial movement of said reflector together with said light source; and

wherein further axial movement of said head toward said body is capable of causing axial movement of said reflector relative to said light source.

EXHIBIT  6
PAGE  73

Patent
Attorney Docket: 728256-100310

Claim 5 (Original)

5.      A lighting apparatus, comprising:

a body for retaining at least one battery;

a light source;

a reflector; and

a head for retaining said reflector and said light source;

wherein said light source is capable of being selectively electrically connected to said at least one battery to cause said light source to emit light;

wherein axial movement of said reflector toward said body is capable of causing axial movement of said reflector together with said light source; and

wherein further axial movement of said reflector toward said body is capable of causing axial movement of said reflector relative to said light source.


Claim 6 (Original)

6.      The lighting apparatus according to claim 5, wherein said head comprises a bezel and rotation of said bezel is capable of causing axial movement of said reflector toward said body.


Claim 7 (Original)

7.      A switch, comprising:

a reflector having a central opening;

a light source capable of protruding through the central opening of said reflector;

a first spring electrically connected to said light source, wherein compression of said first spring causes axial movement of said reflector together with said light source;

EXHIBIT   6
PAGE   74

MCO 000071

Patent
Attorney Docket: 728256-100310

a second spring mechanically connected to said reflector, wherein compression of said

second spring causes axial movement of said reflector relative to said light source; and

wherein said second spring has a greater resistance to compression than said first spring.

EXHIBIT   6
PAGE   75

Patent
Attorney Docket: 728256-100310

## REMARKS

In the Office Action, dated April 24, 2007, the Examiner rejected pending claims 1-3 under 35 U.S.C. §102(b) as being anticipated by United States Patent No. 5,605,394 (Chen). No other grounds for rejection were provided. Claim 1 has been amended.

**I.    Response to the Claim 1 Rejection:**

In support of the claim 1 rejection, the Examiner stated that the Chen reference discloses: (1) a body **10** for retaining at least one battery, said body having a plurality of serrations **14, 141**; (2) a base **21** attached to said body by at least one pivot connection point **211**, said base having a stop **221**; (3) a light source attached to said body, and selectively electrically connected to said at least one battery to cause said light source to emanate light; and (4) wherein said stop is capable of engaging with one or ore of said serrations to facilitate desired angular adjustment of light emanating from said light source. The Applicant respectfully disagrees and traverses this rejection.

In the Chen reference, the light source is *not* housed within the structure identified by the Examiner as the "body" (*i.e.*, the structure identified by the number **10**). Instead, the light source appears to be attached to the structure identified by the Examiner as the "base" (*i.e.*, the structure identified by the number **21**). As stated in the Chen reference's specification:

> The head assembly **20** includes a hemispherical member **21**, a lens cap
>
> (shown but not numbered) threadedly engaged into the hemispherical
>
> member **21**, an electrical socket (not shown) mounted within the
>
> hemispherical member **21**, [and] *a light bulb (not shown) received in*
>
> *the electrical socket.*

EXHIBIT    6
PAGE       76

Patent
Attorney Docket: 728256-100310

(column 2, lines 22-26, emphasis added). The Chen reference therefore discloses a flashlight wherein the light source appears to be attached to the structure that does not have serrations and that is not capable of retaining at least one battery. In contrast, pending claim 1 as amended describes a lighting apparatus wherein the light source is housed within a structure that has a plurality of serrations and that is capable of retaining at least one battery.

## II.    Response to the Claim 2 Rejection:

In support of the claim 2 rejection, the Examiner stated that the Chen reference discloses: (1) a power supply; (2) a body **10** having a plurality of serrations **14/141**; (3) a base **21** attached to said body by at least one pivot connection point **211**, said base having a stop **221**; (4) a light source attached to said body, and selectively electrically connected to said power supply to cause said light source to emanate light; and (5) wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. The Applicant respectfully disagrees and traverses this rejection.

The light source in the Chen reference is *not* attached to the structure identified by the Examiner as the "body" (*i.e.*, the structure identified by the number **10**). Instead, the light source appears to be attached to the structure identified by the Examiner as the "base" (*i.e.*, the structure identified by the number **21**). Thus, the Chen reference discloses a flashlight wherein the light source appears to be attached to the structure that does not have serrations. In contrast, pending claim 2 describes a lighting apparatus wherein the light source is attached to a structure that has a plurality of serrations.

## III.    Response to the Claim 3 Rejection:

In support of the claim 3 rejection, the Examiner stated that the Chen reference discloses: (1) a body **10** for retaining at least one battery; (2) a light source; (3) a head **20** capable of

MCO 000074

EXHIBIT    6
PAGE    77

Patent
Attorney Docket: 728256-100310

housing said light source, wherein said head is removably attached to said body and movement thereof selectively electrically connects said light source with said at least one battery; and (4) a base **21**, connected to said body, wherein at least one point of connection between said base and said body is located substantially between said at least one battery and said head. The Applicant respectfully disagrees and traverses this rejection.

The Chen reference never discloses or even suggests that movement of the structure identified by the Examiner as the "head" (*i.e.*, the structure identified by the number **20**) is capable of selectively electrically connecting the light source with the at least one battery. Indeed, the specification only states "The means for switching the flashlight and the socket member mounted in the head assembly **20** for receiving a light bulb may be of any structure well known to those skilled in the art and are not considered a part of the invention." (column 2, lines 8-12).

The Chen reference also fails to disclose or even suggest that the structure identified by the Examiner as the "head" (*i.e.*, the structure identified by the number **20**) is removably attached to the structure identified by the Examiner as the "body" (*i.e.*, the structure identified by the number **10**). While the Examiner cites to Figure 3 of the Chen reference, the specification provides absolutely no support for this proposition. Indeed, the specification identifies Figure 3 as an "exploded" view of the flashlight. (column 1, line 53). It is well known that an "exploded" view is typically used to represent structures that may not be visible in normal operation. It is in no way a representation that the structures depicted can actually be separated and/or re-attached.

EXHIBIT  6
PAGE   78

Patent
Attorney Docket: 728256-100310

## CONCLUSION

The Applicant respectfully submits that pending claims 1-7 are all now in condition for allowance. If such is not the case, the Examiner is kindly requested to contact the undersigned in an effort to satisfactorily conclude prosecution.

Respectfully submitted,

JONES DAY

Dated: July 24, 2007

By: _____
Charles A. Kertell
Reg. No. 41,891

555 South Flower Street, 50th Floor
Los Angeles, California 90071
(213) 489-3939

EXHIBIT  6
PAGE  79

# EXHIBIT 7

I hereby certify that this correspondence is being filed via
EFS-Web with the United States Patent and Trademark Office
on _June 24, 2009_____ .

TOWNSEND and TOWNSEND and CREW LLP

By: _/Shelley Reames/_____

PATENT

Docket No.: 27451C-014100US

Client Ref. No.: Orgair-2-5891

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventor: | Examiner:     Not Assigned |
|        Christopher Lee Halasz | Art Unit:     Not Assigned |
| Patent No.:        7,410,272 | |
| Issued:        August 12, 2008 | **REQUEST FOR *INTER PARTES*** |
| Application No.:        11/607,259 | **REEXAMINATION UNDER** |
| Filed:        December 1, 2006 | **37 C.F.R. § 1.915** |
| Title:  LIGHTING DEVICE | |

Mail Stop Inter partes Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

The undersigned requests *inter partes* reexamination of U.S. Patent Number 7,410,272, entitled "Lighting Device," issued on August 12, 2008.

Pursuant to 37 C.F.R. § 1.915, this request includes the following:

1.    Pursuant to 37 C.F.R. § 1.915(a), the $8,800 fee for requesting *inter partes* reexamination set forth in 37 C.F.R. § 1.20(c)(2) is submitted herewith.

2.    Pursuant to 37 C.F.R. § 1.915(b)(1), the patent for which reexamination is requested is U.S. Patent Number 7,410,272 (The "'272 Patent"), entitled "Lighting Device," issued on August 12, 2008.  Reexamination is requested for claims 1 and 2, as repeated below in Section I.

Exhibit 7
Page 80

Christopher Lee Halasz                                                    <u>PATENT</u>
Application No.: 11/607,259
Page 2

     3.     Pursuant to 37 C.F.R. § 1.915(b)(2), a citation of the patents and printed publications which are presented to provide a substantial new question of patentability is included in Section II, below.  A form 1449 is filed herewith listing these documents.

     4.     Pursuant to 37 C.F.R. § 1.915(b)(3), this request includes a statement pointing out each substantial new question of patentability based on prior patents and printed publications, discussed in detail below in Section III.  A detailed explanation of the pertinence and manner of applying the cited prior art to every claim for which reexamination is requested is discussed in detail below in Section IV.

     5.     Pursuant to 37 C.F.R. § 1.915(b)(4), a copy of every patent or printed publication relied upon or referred to (the patents listed in Section II) is attached as Exhibits A-F.

     6.     Pursuant to 37 C.F.R. § 1.915(b)(5), a copy of the `272 patent is submitted herewith as Exhibit 1.

     7.     Pursuant to 37 C.F.R. § 1.915(b)(6), the signature on this request certifies that a copy of the request has been served in its entirety on the patent owner's representative at the address provided for in 37 C.F.R. § 1.33(c) by Federal Express overnight delivery on the date set forth below, addressed as follows:

        **Charles Kertell**
        **Jones Day**
        **555 South Flower Street**
        **Fiftieth Floor**
        **Los Angeles, CA 90071**

     8.     Pursuant to 37 C.F.R. § 1.915(b)(7), the signature on this request certifies that the estoppel provisions of § 1.907 do not prohibit this inter partes reexamination.

     9.     Pursuant to 37 C.F.R. § 1.915(b)(8), the real party in interest is:

     The Coleman Company, Inc.
     3600 N. Hydraulic
     Wichita, KS 67219

Exhibit 7
Page 81

Christopher Lee Halasz                                                      <u>PATENT</u>
Application No.: 11/607,259
Page 3

**REMARKS**

**I.      Claims For Which Reexamination Is Requested**

Reexamination of claims 1 and 2 is requested.

Exhibit 7
Page 82

Christopher Lee Halasz                                    <u>PATENT</u>
Application No.: 11/607,259
Page 4

## II.    **Citation of Patents and Printed Publications**

Exhibit A:    U.K. Patent No. 248,030 to Stretton ("Stretton")

Exhibit B:    U.S. Patent No. 4,916,596 to Sharrah et al. ("Sharrah")

Exhibit C:    U.S. Patent No. 6,142,644 to Leung ("Leung")

Exhibit D:    U.S. Patent No. 4,521,831 to Thayer ("Thayer")

Exhibit E:    U.S. Patent No. 4,967,323 to Johnson et al. ("Johnson")

Exhibit F:    U.S. Patent No. 2,612,598 to Berman ("Berman")

Exhibit 7
Page 83

Christopher Lee Halasz                                    PATENT
Application No.: 11/607,259
Page 5

## III.     Substantial New Questions Of Patentability

At least six substantial new questions of patentability exist regarding the `272 patent.  These questions of patentability rely on U.S. patents, applications, and other printed publications under 35 USC §§ 102(b), 102(e), and 103(a).

The application for the `272 patent was filed on December 1, 2006, and claims priority through a chain of applications to provisional application No. 60/224,313, filed August 10, 2000.  Accordingly, assuming the provision application contains sufficient information to support the claims of the `272 patent, which is questionable given the minimum amount of information in the original provisional application, an invalidating printed publication under 35 U.S.C. §§ 102(b) would have a publication date of earlier than August 10, 1999.  Due to the fact that all references used in this reexamination are sufficiently old to serve as prior art references, this request does not address the adequacy of disclosure of the provisional application.

If a patent is granted on an application for patent by another filed in the United States before the invention date of the features in the `272 patent, such a patent could invalidate the `272 patent under 35 U.S.C. § 102(e).

### A.     Substantial New Question of Patentability in View of U.K. Patent No. 248,030 to Stretton ("Stretton")

The first substantial new question of patentability is raised for claims 1 and 2 by Stretton, a copy of which is provided at Exhibit A.  Stretton issued as a patent March 01, 1926, and thus qualifies as prior art under 35 U.S.C. § 102(b).

No art having a disclosure similar to Stretton was cited in the file history of the `272 patent.  Moreover, Stretton presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application that resulted in the `272 patent, and thus raises a substantial new question of patentability.  At a minimum, Stretton presents a lamp socket or holder *a* rotatably mounted on a bracket *d*.  The position of the holder relative to the socket is determined by a spring plunger

Exhibit 7
Page 84

Christopher Lee Halasz                                                    <u>PATENT</u>
Application No.: 11/607,259
Page 6

device *f* which engages one of a plurality of recesses *g*.  Such a device was not of record in the file history of the `272 patent.

As set forth in detail in Section IV below, a careful examination of Stretton shows that the reference discloses all elements of claim 2 of the `272 patent, and discloses or makes obvious all elements of claim 1.  Thus, a substantial question of patentability exists with respect to the reference.

**B.**   <u>**Substantial New Question of Patentability in View of U.S. Patent No. 4,916,596 to Sharrah et al. ("Sharrah")**</u>

A substantial new question of patentability is raised for claims 1 and 2 by Sharrah, a copy of which is provided at Exhibit B.  Sharrah issued as a patent on April 10, 1990, which qualifies Sharrah as prior art under 35 U.S.C. § 102(b).  Sharrah was not cited in the file history of the `272 patent.

No art having a disclosure similar to Sharrah was cited in the file history of the `272 patent.  Moreover, Sharrah presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application that resulted in the `272 patent, and thus raises a substantial new question of patentability.  At a minimum, Sharrah presents a lamp housing that is tiltable within an outer housing 50. Tilting of lamp housing 52 is controlled by means of a pair of detents 126a and 126b (FIG. 12) located along the bottom of the lamp housing 52. The detents 126a and 126b slide in and out of a plurality of ridges 128 whereby a plurality of discrete tilt positions are determined. Such a device was not of record in the file history of the `272 patent.

As set forth in detail in Section IV below, a careful examination of Sharrah shows that the reference discloses all elements of claim 2 of the `272 patent, and discloses or makes obvious all elements of claim 1.  Thus, a substantial question of patentability exists with respect to the reference.  The specific application of Sharrah against claims 1 and 2 is set forth in section IV, below.

Exhibit 7
Page 85

Christopher Lee Halasz                                                    <u>PATENT</u>
Application No.: 11/607,259
Page 7

C.   <u>Substantial New Question of Patentability in View of U.S. Patent No.
6,142,644 to Leung ("Leung")</u>

A substantial new question of patentability is also raised for claims 1 and 2 by
Leung, a copy of which is provided at Exhibit C.  Leung issued November 7, 2000, and was filed
April 27, 1999, which qualifies Leung as prior art under 35 U.S.C. § 102(e).

Leung was not cited in the file history of the `272 patent.  Moreover, Leung
presents a new, non-cumulative technological teaching that was not previously considered and
discussed on the record during the prosecution of the application that resulted in the `272 patent,
and thus raises a substantial new question of patentability.  At a minimum, Leung discloses a
main housing 17 having the battery compartment and side supports to engage lamp housing 4.
Teeth 38 on either side of lamp housing 4 engage nibs 39 on a plastic spring member 11 on the
main housing 17, to stop the rotation at any desired intermediate point, either by releasing button
10 during the slow motion automatic rotation of lamp housing 4, or by manually rotating lamp
housing 4.  Such a device was not of record in the file history of the `272 patent.

As set forth in detail in Section IV below, a careful examination of Leung shows
that the reference discloses all elements of claim 2 of the `272 patent, and discloses or makes
obvious all elements of claim 1.  Thus, a substantial question of patentability exists with respect
to the reference.  The specific applications of Leung to the requirements of claims 1 and 2 are set
forth in Section IV, below.

D.   <u>Substantial New Question of Patentability in View of U.S. Patent
No. 4,521,831 to Thayer ("Thayer")</u>

A substantial new question of patentability is raised for claims 1 and 2 by Thayer,
a copy of which is provided at Exhibit D.  Thayer issued June 4, 1985, which qualifies Thayer as
prior art under 35 U.S.C. § 102(b).

Thayer was not cited in the file history of the `272 patent.  Moreover, Thayer
presents a new, non-cumulative technological teaching that was not previously considered and
discussed on the record during the prosecution of the application that resulted in the `272 patent,

Exhibit 7
Page 86

Christopher Lee Halasz                                                        <u>PATENT</u>
Application No.: 11/607,259
Page 8

and thus raises a substantial new question of patentability. At a minimum, Thayer discloses lamps 30 mounted on the side of a helmet 10. The lamps 30 include batteries therein, and include pawls 55 that engage teeth of the circular ratchet 44 so that the lamps may be rotated to a desired position. Such a device is not of record in the file history of the `272 patent.

As set forth in detail in Section IV below, a careful examination of Thayer shows that the reference discloses all elements of claims 1 and 2 of the `272 patent. The specific applications of Thayer to the requirements of claims 1 and 2 are set forth in Section IV below.

In addition, additional new questions of patentability are raised when combining Thayer with Stretton, Leung, Berman, or Sharrah. Such a combination would make claim 1 obvious, as described in detail in Section IV, below.

E.   <u>Substantial New Question of Patentability in View of U.S. Patent No. 4,967,323 to Johnson et al. ("Johnson")</u>

A substantial new question of patentability is raised for claims 1 and 2 by Johnson, a copy of which is provided at Exhibit E. Johnson issued as a patent on October 30, 1990, which qualifies Johnson as prior art under 35 U.S.C. § 102(b). Johnson was not cited in the file history of the `272 patent.

No art having a disclosure similar to Johnson was cited in the file history of the `272 patent. Moreover, Johnson presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution of the application that resulted in the `272 patent, and thus raises a substantial new question of patentability. At a minimum, Johnson presents a flashlight having a flat base for application to a user's clothing where desired or convenient, the flashlight being somewhat elongated with a lamp bulb at one end and a supporting ball and socket at the other end, with the base, the ball and socket being such as to allow manual swiveling of the beam of light while still maintaining the position of the beam of light in the desired direction, as by friction between ball and socket. The battery in Johnson is mounted in the lamp housing.

Exhibit 7
Page 87

Christopher Lee Halasz                                                    <u>PATENT</u>
Application No.: 11/607,259
Page 9

      As set forth in detail in Section IV below, a careful examination of Johnson shows that the reference discloses all elements of claim 1 of the `272 patent, with the exception of the serrations and stop, but it would be obvious to a person of ordinary skill to combine the reference with either Stretton, Leung, Berman, or Sharrah to come to the device of claim 1. Thus, a substantial question of patentability exists with respect to the reference. The specific application of Johnson against claim 1 is set forth in Section IV, below.

    **F.**    <u>Substantial New Question of Patentability in View of U.S. Patent No. 2,612,598 to Berman ("Berman")</u>

      A substantial new question of patentability is raised for claims 1 and 2 by Berman, a copy of which is provided at Exhibit F. Berman issued as a patent on September 30, 1952, which qualifies Berman as prior art under 35 U.S.C. § 102(b). Berman was not cited in the file history of the '272 patent.

      No art having a disclosure similar to Berman was cited in the file history of the '272 patent. Moreover, Berman presents a new, non-cumulative technological teaching that was not previously considered and discussed on the record during the prosecution that resulted in the '272 patent, and thus raises a substantial new question of patentability. At a minimum, Berman presents a flashlight with an H-shaped frame and a circular rotor in which is mounted a lamp. The battery in Berman is mounted in the H-shaped frame. Serrations are provided on the rotor that engage a detent to hold the rotor in a particular position.

      As set forth in detail in Section IV below, a careful examination of Berman shows that the reference discloses all elements of claim 2 of the '272 patent, and discloses or makes obvious all elements of claim 1. Thus, a substantial question of patentability exists with respect to the reference. The specific applications of Berman to the requirements of claims 1 and 2 are set forth in Section IV, below.

Exhibit 7
Page 88

Christopher Lee Halasz                                              <u>PATENT</u>
Application No.: 11/607,259
Page 10

## IV.   Pertinence And Manner Of Applying Prior Art

The prior art identified above should be applied to the claims of the `272 patent as follows to reject claims 1 and 2.

### A.   Claims 1 and 2 of the `272 Patent

The `272 patent is directed to a portable, battery-operated flashlight.  Fig. 1, as set forth below, shows a head-worn flashlight 10 in the `272 patent.



Fig. 1

The `272 patent describes features of the flashlight 10 at col. 3, ll. 29-44 (sections removed for detail):

> The body 14 serves as a chamber for holding one or more batteries in a series
> arrangement…Referring to FIGS. 1 and 2, the body 14 also includes, in a
> mid-region of the bottom portion 26, serrations 28 on an exterior surface of the

Exhibit 7
Page 89

Christopher Lee Halasz
Application No.: 11/607,259
Page 11

PATENT

body 14 for engaging a surface 30 of the base 16. A close-up view of a preferred embodiment of serrations 28 is shown in FIG. 2.

The serrations 28 are shown best in Fig. 2 of the `272 patent, set forth below.



Fig. 2

The passage further describes:

Serrations 28 facilitate desired angular adjustment of the body 14 and head assembly 12 with respect to the base 16.  This is accomplished when serrations 28 mate with the pivot stop 29 located on base 16, as shown in FIG. 3.

Fig. 3 is set forth below:



Fig. 3

Exhibit 7
Page 90

Christopher Lee Halasz                                               <u>PATENT</u>
Application No.: 11/607,259
Page 12

     The connection of the serrations 28 and the stop 29 is best shown in Fig. 5,
(below).  Although the figure clearly shows the stop 29, the part is not labeled in the drawings.
However, the stop is centered on the base 16 and engages a bottom portion of the housing 14
between the serrations 28.



Fig. 5

     Thus, the stop 29 and the serrations 28, along with the rotatable mounting of the
body 14 relative to the base, permit the body to rotate relative to the base and to be made stable
when the serrations 28 mate with the pivot stop 29.

     Claims 1 and 2 of the `272 Patent are both directed to the serrations and stop
features described above.  Each of the claims includes a body having serrations and a base
attached to the body by at least one pivot connection.  A light source is attached to or housed
within the body.  Claim 1 also includes a requirement that a battery be mounted in the body.  The
claims are set forth below:

     1.     A lighting apparatus, comprising:

     a body for retaining at least one battery, said body having a
plurality of serrations;

     a base attached to said body by at least one pivot connection point,
said base having a stop; and

Exhibit 7
Page 91

Christopher Lee Halasz                                      <u>PATENT</u>
Application No.: 11/607,259
Page 13

a light source, housed within said body, and selectively electrically connected to said at least one battery to cause said light source to emanate light;

wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source.


2.      A lighting apparatus, comprising:

a power supply;

a body having a plurality of serrations;

a base attached to said body by at least one pivot connection point, said base having a stop; and

a light source, attached to said body, and selectively electrically connected to said power supply to cause said light source to emanate light;

wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source.

**B.      Claim 2 is Unpatentable Under § 102(b) as Being Anticipated by Stretton.**

Stretton discloses each and every element of claim 2 of the `272 patent.

Stretton is directed to an electric hand lamp, and includes a very similar structure to the lamp disclosed in the `272 patent.  Specifically, as shown below in Fig. 1 of Stretton, an electric lamp is provided having a lamp holder rotatably mounted on a base *b*.  A stop *f* is provided for engaging recesses to lock the lamp holder in a desired rotation.  As described at page 1, lines 27-31, the goal in Stretton is identical to the goal in the '272 patent: "according to the invention, moreover, means are provided whereby the socket or holder and the reflector may be maintained in any desired position of angular adjustment."

Exhibit 7
Page 92

Christopher Lee Halasz                                                    <u>PATENT</u>
Application No.: 11/607,259
Page 14



**Fig. 1.**

Stretton describes its structure and function at page 2, lines 73-85:

The lamp socket or holder *a* is conveniently made integral with the reflector *a*[1] and is advantageously pivoted upon a transverse axis by means of pivot pins *c* mounted in the brackets *d*. The means by which the angular position of the lamp socket or holder and reflector is determined comprises a spring plunger device *f* carried by the lamp top *e* in a position adjacent or between the brackets *d*, the plunger being adapted to engage in any one of a series of recesses *g* formed upon the lamp socket or holder *a* or in a fitting mounted thereon.

Thus, the structure disclosed in Stretton is not only identical to the structure set forth in claim 2 of the `272 patent, but the objects in the Stretton patent are the same, in that a lamp is rotatable relative to a base to a plurality of positions, and a stop is provided for holding the lamp in each of these positions. In the embodiment disclosed in Stretton, the serrations are the recesses *g*, and the stop is the spring plunger device *f*. Stretton also discloses that such means may instead be a ratchet and pawl device, one of the elements of which is fitted upon the socket or holder or upon a fitting in fixed relation thereto (page 1, lines 52-56).

The following chart compares the requirements of claim 2 of the `272 patent with respect to the features in Stretton.

Exhibit 7
Page 93

Christopher Lee Halasz
Application No.: 11/607,259
Page 15

<u>PATENT</u>

| Claim 2 of `272 patent | Stretton device |
|---|---|
| 2. A lighting apparatus, comprising: | Stretton is directed to a lighting apparatus, and more specifically to lamps, and electric lamps. |
| a power supply; | Stretton teaches that the battery is held in the casing *b* at page 1, lines 60-65. |
| a body having a plurality of serrations; | The lamp socket or holder *a* meets the requirements of the body. The serrations are the recesses *g* that are formed on the bottom of the lamp socket or holder *a*. Page 2, lines 73-85. Alternatively, the ratchet and pawl device described as an alternative meets the requirement for the serrations. Page 1, lines 52–56. |
| a base attached to said body by at least one pivot connection point, said base having a stop; and | The casing *b* is pivotally mounted to the lamp socket or holder *a*, as described at page 2, lines 59-65. The stop is the spring plunger device *f*. |
| a light source, attached to said body, and selectively electrically connected to said power supply to cause said light source to emanate light; | A lamp bulb and light source are discussed throughout Stretton, and the lamp bulb and connection to power are described at page 2, lines 86-92. The different ways of turning the lamp on and off are described as follows: "The manner in which the circuit through the lamp bulb is completed is immaterial, that is to say, the circuit may be completed through flexible leads extending from the battery to the socket or holder, or it may be completed by way of the cover plate and the standard or the standards and the socket or holder, the construction of these parts being such as to provide the negative and positive paths for the current." Page 1, lines 68-78. |
| wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. | The plunger *f* is adapted to engage in any one of a series of recesses *g* formed upon the lamp socket or holder *a* or in a fitting mounted thereon (page 2, lines 80-85), so that the light may be set at a desired angular adjustment (page 2, lines 38-50). |

Exhibit 7
Page 94

Christopher Lee Halasz                                          <u>PATENT</u>
Application No.: 11/607,259
Page 16

Thus, as clearly set forth above, the Stretton device discloses each and every element of claim 2, and thus anticipates claim 2. Therefore, claim 2 is unpatentable under 35 U.S.C. § 102(b) in view of Stretton.

**C.    Claim 1 is Unpatentable Under Section 103(a) as Being Obvious in View of Stretton**

Claim 1 is similar to claim 2, but additionally requires a battery in the body. An analysis of that claim is set forth in the following chart.

| Claim 1 of `272 patent | Stretton device |
|---|---|
| 1. A lighting apparatus, comprising: | Stretton is directed to a lighting apparatus, and more specifically to lamps, and electric lamps. |
| a body for retaining at least one battery, said body having a plurality of serrations; | Stretton teaches that the battery is held in the casing *b* at page 1, lines 60-65. The serrations are the recesses *g* formed upon the lamp socket or holder *a*. The battery in Stretton is <u>not</u> located in the body. However, as described below, it would be obvious to a person of ordinary skill to include the battery in the body, especially in light of the fact that batteries have been so much miniaturized since the filing of Stretton in 1925. A modern, conventional miniaturized battery would easily mount in the body of Stretton. |
| a base attached to said body by at least one pivot connection point, said base having a stop; and | The casing *b* is pivotally mounted to the lamp socket or holder *a*, as described at page 2, lines 59-65. The stop is the spring plunger device *f*. |
| a light source, housed within said body, and selectively electrically connected to said at least one battery to cause said light source to emanate light; | A lamp bulb and light source are discussed throughout Stretton, and the lamp bulb in connection to power is described at page 2, lines 86-92. The different ways of turning the lamp on and off are described as follows: "The manner in which the circuit through the lamp bulb is completed is immaterial, that is to say, the circuit may be completed through flexible leads extending from the battery to the socket or holder, or it may be completed |

Exhibit 7
Page 95

<u>PATENT</u>

| | by way of the cover plate and the standard or standards and the socket or holder, the construction of these parts being such as to provide the negative and positive paths for the current." Page 1, lines 68-78. |
|---|---|
| wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. | The plunger *f* is adapted to engage in any one of a series of recesses *g* formed upon the lamp socket or holder *a* or in a fitting mounted thereon (page 2, lines 80-85), so that the light may be set at a desired angular adjustment (page 2, lines 38-50). |

As set forth above, Stretton includes each and every limitation of claim 1, with the exception of the battery being within the body. Instead, in Stretton, the battery is mounted in the base. However, moving the battery into the lamp body would be within the purview of one with ordinary skill in the art. Such a move would be motivated by the desire to make the device of Stretton more compact and space efficient, and based upon the knowledge in the art at the time of filing the '272 patent that batteries are smaller and can be mounted in a lamp housing with the lamp. *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007) ("If a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its application is beyond his or her skill.") It is clear here that moving the batteries from the base into the housing, especially in light of the modern use of smaller batteries, would be obvious to a person of ordinary skill in the art.

In addition, recent developments in lamps, and particularly LED lamps, permit batteries to be smaller and lamps to be smaller, allowing room inside the body and multiple different arrangements for a lamp and a battery or batteries so that the body is properly balanced.

Moreover, and importantly, Stretton requires a structure for maintaining a circuit through its pivot axes, which may be complicated and/or faulty. Such a circuit may be avoided by placing the batteries in the body with the lamp. For at least these additional reason, there is motivation to alter the structure of Stretton to include the batteries in the body.

Thus, claim 1 is obvious in view of Stretton. Therefore, claim 1 is unpatentable under 35 U.S.C. § 103(a) in view of Stretton.

Exhibit 7
Page 96

Christopher Lee Halasz                                         <u>PATENT</u>
Application No.: 11/607,259
Page 18

### D.  Claim 2 is Unpatentable Under 35 U.S.C. § 102(b) as Being Anticipated by Sharrah

Sharrah is directed to a convertible flashlight.  The flashlight is convertible between a hand-held form and a body-mountable form.  In accordance with one of the embodiments shown and described in Sharrah, a lamp housing 52 is tiltable with respect to an outer housing 50.  This structure is shown in Fig. 12, set forth below.



FIG. 12

As described in Sharrah, the lamp housing includes detents 126(a) and 126(b) located on the bottom of the lamp housing that slide in and out of a plurality of ridges 128 in the outer housing 50:

> The lamp housing 52 is tiltable within the outer housing 50.  The sleeves 74*a* and 74*b* rotate in sockets 125*a* and 125*b* respectively in outer casing 50, so that the housing may pivot on an axis transverse to the axis of the light beam directed by the reflector.  Tilting of lamp housing 52 is controlled by means of a pair of detents 126*a* and 126*b* (Fig. 12) located along the bottom of lamp housing 52.  The detents slide in and out of a plurality of ridges 128 whereby a plurality of discrete tilt positions are determined (Col. 7, line 64-Col. 8, line 5, correction made as shown by brackets).

Exhibit 7
Page 97

Christopher Lee Halasz                                              <u>PATENT</u>
Application No.: 11/607,259
Page 19

     Thus, it is clear from the above that the structure in Sharrah meets the

requirements of claim 2.  An analysis of that claim is set forth in the following chart.

| Claim 2 of `272 patent | Sharrah device |
|---|---|
| 2. A lighting apparatus, comprising: | Sharrah is directed to a flashlight that is convertible between a hand-held form and a body-mountable form. |
| a power supply; | Sharrah teaches batteries 23a to 23d |
| a body having a plurality of serrations; | The lamp housing 52 is the body, and includes the detents 126a and 126b located along a bottom side of the lamp housing 52 that serve the function of the serrations (Col. 7, line 64-Col. 8, line 5). |
| a base attached to said body by at least one pivot connection point, said base having a stop; and | The outer housing 50 is the base, and includes the plurality of ridges 128, any one of which may be the stop.  The outer housing 50 is connected to the base in a pivot connection via the sleeves 74a and 74b rotating in sockets 125a and 125b (Col. 6, lines 64-68). |
| a light source, attached to said body, and selectively electrically connected to said power supply to cause said light source to emanate light; | Sharrah includes a light bulb 56 electrically connected to the power supply (Col. 7, lines 32-40).  A switching and focusing mechanism is provided in the head assembly 12 for turning the flashlight on and off.  (Col. 5, lines 8-10). |
| wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. | Tilting of the lamp housing 52 is controlled by means of the detents 126a and 126b located at the bottom of the lamp housing.  The detents slide in and out of a plurality of ridges 128 whereby a plurality of discreet tilt positions are determined (Col. 7, lines 68-Col. 8, line 5). |

     Thus, as it is clearly set forth above, Sharrah discloses each and every element of

claim 2, and thus anticipates claim 2.  Therefore claim 2 is unpatentable under 35

U.S.C. § 102(b) in view of Sharrah.

Exhibit 7
Page 98

Christopher Lee Halasz                                                     <u>PATENT</u>
Application No.: 11/607,259
Page 20

E.    **Claim 1 is Unpatentable Under 35 U.S.C. § 103(a) as Being Obvious in View of Sharrah**

Claim 1 is similar to claim 2, but additionally requires a battery in the body.  An analysis of that claim is set forth in the following chart.

| Claim 1 of `272 patent | Sharrah device |
|---|---|
| 1. A lighting apparatus, comprising: | Sharrah is directed to a flashlight that is convertible between a hand-held form and a body-mountable form. |
| a body for retaining at least one battery, said body having a plurality of serrations; | Sharrah includes a lamp housing 52 that constitutes the body.  The body includes a pair of detents 126a and 126b that meet the requirements of the plurality of serrations.  The battery in Sharrah is not located in the body.  However, as described below, it would be obvious to include a battery in the body, especially in light of the fact that batteries have been miniaturized since the filing of Sharrah in 1989.  Thus, a conventional smaller battery would easily mount in the housing of Sharrah. |
| a base attached to said body by at least one pivot connection point, said base having a stop; and | The outer housing 50 is the base, and includes the plurality of ridges 128, any one of which may be the stop.  The outer housing 50 is connected to the base in a pivot connection via the sleeves 74a and 74b rotating in sockets 125a and 125b (Col. 6, lines 64-68). |
| a light source, housed within said body, and selectively electrically connected to said at least one battery to cause said light source to emanate light; | Sharrah includes a light bulb 56 electrically connected to the power supply (Col. 7, lines 32-40).  A switching and focusing mechanism is provided in the head assembly 12 for turning the flashlight on and off.  (Col. 5, lines 8-10). |
| wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. | Tilting of the lamp housing 52 is controlled by means of the detents 126a and 126b located at the bottom of the lamp housing.  The detents 128 slide in and out of a plurality of ridges whereby a plurality of discreet tilt positions are determined (Col. 7, lines 68-Col. 8, line 5). |

Exhibit 7
Page 99

Christopher Lee Halasz                                                            <u>PATENT</u>
Application No.: 11/607,259
Page 21

As set forth above, Sharrah includes each and every limitation of claim 1, with the exception of the battery being within the body. Instead, in Sharrah, the battery is mounted in the base. However, moving the battery into the lamp body would be within the purview of one with ordinary skill in the art. Such a move would be motivated by the desire to make the device of Sharrah more compact and space efficient. *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007) ("If a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its application is beyond his or her skill.") It is clear here that moving the batteries, from the base into the housing, especially in light of the modern use of smaller batteries, would be obvious to a person of ordinary skill in the art.

In addition, recent developments in lamps, and particularly LED lamps, permit batteries to be smaller and lamps to be smaller, allowing room inside the body and multiple different arrangements for a lamp and a battery or batteries so that the body is properly balanced.

Moreover, and importantly, Sharrah requires a structure for maintaining a circuit through its pivot axes, which may be complicated and/or faulty. Such a circuit may be avoided by placing the batteries in the body with the lamp. For at least these additional reason, there is motivation to alter the structure of Sharrah to include the batteries in the body.

Thus, claim 1 is obvious in view of Sharrah. Therefore, claim 1 is unpatentable under 35 U.S.C. § 103(a) in view of Sharrah.

**F.      Claim 2 is Anticipated Under 35 U.S.C. § 102(e) by Leung**

Leung discloses a flashlight with a slow motion lamp assembly. As can be seen in Fig. 2a below, the flashlight in Leung includes a lens 1 mounted on a rotatable lamp housing 4. The rotatable lamp housing 4 is mounted on a housing (generally at 14 below) that includes batteries for powering the lens 1.

Exhibit 7
Page 100

Christopher Lee Halasz
Application No.: 11/607,259
Page 22

PATENT



**Fig. 2A**

As shown in Fig. 5, below, the lamp housing 4 includes teeth 38 that engage nibs 39 in a primary housing for the flashlight.



Fig. 5

As described at Col. 4, lines 9-14, the teeth and nibs engage one another so as to provide preferential aiming of the lens 1:

> Lamp 3 has two rigid wire leads 35, and it fits through a central hole in metalized reflector 2.  Teeth 38 on either side of lamp housing 4 engage nibs 39 on plastic spring member 11, which is also illustrated in Fig. 5, to stop the rotation at any desired intermediate point, by either releasing button 10 during the slow motion automatic rotation of lamp housing 4, or by manually rotating lamp housing 4.

Exhibit 7
Page 101

Christopher Lee Halasz
Application No.: 11/607,259
Page 23

<u>PATENT</u>

The following chart compares the requirements of claim 2 of the `272 patent with respect to the features in Leung.

| Claim 2 of `272 patent | Leung device |
|---|---|
| 2. A lighting apparatus, comprising: | Leung is directed to a flashlight with a slow motion lamp assembly. |
| a power supply; | Leung discloses a battery compartment for receiving batteries 37. |
| a body having a plurality of serrations; | The rotatable lamp housing 40 is the body. The serrations are the teeth 38 (Col. 4, lines 8-14). |
| a base attached to said body by at least one pivot connection point, said base having a stop; and | The base is the main housing of the flashlight, and the stop is the nib 39. The bosses 40 act as the pivot rotation points (Col. 4, lines 27-40). |
| a light source, attached to said body, and selectively electrically connected to said power supply to cause said light source to emanate light; | The light source is the lamp 3 which is connected to the batteries by lamp contacts (Col. 4, lines 64-Col. 5, line 4). Rotation of the lamp housing 4 interrupts power (Col. 5, lines 12-14). |
| wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. | The nibs 39 on the plastic spring member 11 engage the teeth 38 on either side of the lamp housing 4 to stop the rotation at any desired intermediate point (Col. 4, lines 8-14). |

Thus, as clearly set forth above, the Leung device discloses each and every element of claim 2, and thus anticipates claim 2. Therefore, claim 2 is unpatentable under 35 U.S.C. § 102(e) in view of Leung.

### G.    Claim 1 is Unpatentable Under 35 U.S.C. § 103(a) as Being Obvious in View of Leung.

Claim 1 is similar to claim 2, but additionally requires a battery in the body. An analysis of that claim is set forth in the following chart.

| Claim 1 of `272 patent | Leung device |
|---|---|
| 1. A lighting apparatus, comprising: | Leung is directed to a flashlight with a slow motion lamp assembly. |
| a body for retaining at least one battery, said body having a plurality of serrations; | The rotatable lamp housing 40 is the body. The serrations are the teeth 38 (Col. 4, lines 8- |

Exhibit 7
Page 102

Christopher Lee Halasz                                                    <u>PATENT</u>
Application No.: 11/607,259
Page 24

| | |
|---|---|
| | 14). The battery in Leung is not located in the body. However, as described below, it would be obvious to include the battery in the body, especially in light of the fact that batteries, especially miniaturized batteries, would readily fit within the lamp housing. Thus, a conventional smaller battery would easily mount in the body of Leung. |
| a base attached to said body by at least one pivot connection point, said base having a stop; and | The base is the main housing of the flashlight, and the stop is the nib 39. The bosses 40 act as the pivot rotation points (Col. 4, lines 27-40). |
| a light source, housed within said body, and selectively electrically connected to said at least one battery to cause said light source to emanate light; | The light source is the lamp 3 which is connected to the batteries by lamp contacts (Col. 4, lines 64-Col. 5, line 4). Rotation of the lamp housing 4 interrupts power (Col. 5, lines 12-14). |
| wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. | The nibs 39 on the plastic spring member 11 engage the teeth 38 on either side of the lamp housing 4 to stop the rotation at any desired intermediate point (Col. 4, lines 8-14). |

As set forth above, Leung includes each and every limitation of claim 1, with the exception of the battery being within the body. Instead, in Leung, the battery is mounted in the base. However, moving the battery into the lamp body would be within the purview of one with ordinary skill in the art. Such a move would be motivated by the desire to make the device of Leung more compact and space efficient, and based upon the knowledge in the art that batteries can be mounted in a lamp housing with the lamp. *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007) ("If a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its application is beyond his or her skill.") It is clear here that moving the batteries from the base into the housing, especially in light of the modern use of batteries would be obvious to a person of ordinary skill in the art.

In addition, recent developments in lamps, and particularly LED lamps, permit batteries to be smaller and lamps to be smaller, allowing room inside the body and multiple different arrangements for a lamp and a battery or batteries so that the body is properly balanced.

Exhibit 7
Page 103

Christopher Lee Halasz
Application No.: 11/607,259
Page 25

PATENT

Moreover, and importantly, Leung requires a structure for maintaining a circuit through its pivot axes, which may be complicated and/or faulty. Such a circuit may be avoided by placing the batteries in the body with the lamp. For at least these additional reason, there is motivation to alter the structure of Leung to include the batteries in the body.

Thus, claim 1 is obvious in view of Leung. Therefore, claim 1 is unpatentable under 35 U.S.C. § 103(a) in view of Leung.

**H.    Claims 1 and 2 are Anticipated Under 35 U.S.C. § 102(b) in view of Thayer**

Thayer is directed to a protective helmet with dual adjustment illumination means. As can be seen in Fig. 2 of Thayer, set forth below, the device in Thayer includes a pair of lamp assemblies 15 mounted on opposite sides of a protective helmet.



*FIG. 2*

Exhibit 7
Page 104

Christopher Lee Halasz
Application No.: 11/607,259
Page 26

As shown in Fig. 3, below, each of the lamp assemblies includes a base member 25, a carriage 26, and a lamp support member 27.   A battery operated lamp 30 is secured to the support member 27.   A circular ratchet 44 is molded in the top surface 43 of the carriage 26.



*FIG. 3*

The support member 27 for the lamp 30 includes a pair of opposed pawls 55 that project outwardly from the bottom wall 54 of the bracket and are adapted to operatively engage the teeth in the circular ratchet 44.  These pawls 55 are clearly shown in Fig. 5, set forth below.

Thayer clearly describes the operation of the pawls and the teeth of the ratchet: "the lamp support can thus be selectively indexed to a desired position on the carriage table by

Exhibit 7
Page 105

Christopher Lee Halasz                                                 <u>PATENT</u>
Application No.: 11/607,259
Page 27

simply rotating the support member upon the carriage within the operating range of the ratchet"

(Col. 4, lines 9-13).  A further description of this operation is provided at Col. 4, lines 36-44:

> As should now be evident from the disclosure above, each of the two lamps are rotatably
> supported upon the helmet so that each may be independently turned in a vertical plane
> through 360 degrees of rotation.  Through use of the ratchet-and-pawl arrangement each
> lamp can be brought to a desired position within this field of rotation so as to direct a
> beam at a desired target region.  To redirect either beam, the user simply has to reach up
> and turn the lamp as required.

Thayer clearly discloses all the requirements of claim 1.  A chart comparing

Thayer to the requirements of claim 1 is set forth below.

| Claim 1 of `272 patent | Thayer device |
|---|---|
| 1. A lighting apparatus, comprising: | Thayer is directed to a protective helmet having a pair of lamps mounted on either side of the protective helmet. |
| a body for retaining at least one battery, said body having a plurality of serrations; | The battery operated lamp 30 includes batteries therein.  The two pawls 55 are a plurality of serrations. |
| a base attached to said body by at least one pivot connection point, said base having a stop; and | The base is the carriage 26 and any of the teeth 44 on the base would meet the requirements of the stop.  The base is pivotally mounted to the body, as described by the connection of the key 49 at Col. 3, lines 59 to 61. |
| a light source, housed within said body, and selectively electrically connected to said at least one battery to cause said light source to emanate light; | The battery operated lamp 30 includes the light source requirements of this claim.  A switch is clearly shown on the side of the lamp in Fig. 3, above. |
| wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. | The teeth 44 are capable of engaging with one or more of the pawls 55 to facilitate desired angular adjustment of light emanating from the light source (Col. 4, lines 36-44). |

Thus, as set forth above, Thayer clearly meets all the requirements of claim 1, and

thus claim 1 is unpatentable under 35 U.S.C. § 102(b) in view of Thayer.

Thayer may be used in an alternative manner to anticipate or make obvious

claim 1.  As set forth above, the pawls 55 meet the requirements of the serrations in claim 1.  In

addition, the teeth of the ratchet 44 meet the requirements of the stop in claim 1.  However, in an

alternative rejection of claim 1, a person of ordinary skill could swap the positions of the

Exhibit 7
Page 106

Christopher Lee Halasz                                                PATENT
Application No.: 11/607,259
Page 28

ratchet 44 and the pawls 55 so that the pawls are on the carriage 26 and the ratchets 44 are on the

bracket 50. Such a change "simply arranges old elements with each performing the same

function as it had been known to perform, and yields no more than one would expect from such

an arrangement." *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007). As such, the

modification would be of ordinary purview to a person of skill in the art. Although such a

modification is not needed for Thayer to meet the requirements of claim 1, there is no doubt that

the ratchet teeth of the ratchet 44 meet the requirements of the serration and that the pawls 55

meet the requirements of the stop of claim 1. Thus, in this alternative arrangement, which

claim 1 is obvious in view of Thayer.

Claim 2 is also anticipated by Thayer. A chart showing the requirements of

claim 2 is set forth below.

| Claim 2 of `272 patent | Thayer device |
|---|---|
| 2. A lighting apparatus, comprising: | Thayer is directed to a protective helmet having a pair of lamps mounted on either side of the protective helmet. |
| a power supply; | The lighting assembly is described as having batteries in Thayer. |
| a body having a plurality of serrations; | The battery operated lamp 30 includes batteries therein. The two pawls 55 are a plurality of serrations. |
| a base attached to said body by at least one pivot connection point, said base having a stop; and | The base is the carriage 26 and any of the teeth 44 on the base would meet the requirements of the stop. The base is pivotally mounted to the body, as described by the connection of the key 49 at Col. 3, lines 59-61. |
| a light source, attached to said body, and selectively electrically connected to said power supply to cause said light source to emanate light; | The battery operated lamp 30 includes the light source requirements of this claim. A switch is clearly shown on the side of the lamp in Fig. 3, above. |
| wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. | The teeth 44 are capable of engaging with one or more of the pawls 55 to facilitate desired angular adjustment of light emanating from the light source (Col. 4, lines 36-44). |

Thus, as set forth above, Thayer clearly meets all the requirements of claim 1, and

thus claim 1 is unpatentable under 35 U.S.C. § 102(b) in view of Thayer.

Exhibit 7
Page 107

Christopher Lee Halasz
Application No.: 11/607,259
Page 29

<u>PATENT</u>

Also, as set forth above with respect to claim 1, in an alternative arrangement, the ratchet 44 may be swapped with the pawls 55 in an obviousness rejection of claim 2. However, as set forth above, the existing structure of Thayer is sufficient for an anticipation rejection of the claims.

## I.      Claim 2 is Anticipated Under 35 U.S.C. § 102(b) in View of Berman

Berman is directed to a flashlight with an H-shape frame forming opposed holders for dry cells in a lamp head. As can be seen in Fig. 4 of Berman below, the device in Berman includes a H-shaped housing 15 having batteries 14 mounted therein and side arms 17 extending upwards so as to form an H.



Exhibit 7
Page 108

Christopher Lee Halasz                                                    <u>PATENT</u>
Application No.: 11/607,259
Page 30

     As can be seen in Fig. 2, a circular rotor 25 is rotatably mounted between the two

arms 17.  The circular rotor 25 includes a lamp 35 mounted therein.



     Fig. 8, set forth below, describes an embodiment in which the rotor 25 is rotatably

connected between the two arms 17 of the housing, the housing 15 in the arms 17.  As described

at column 3, lines 49-65 of Berman, the cylindrical wall of the rotor is serrated as indicated at 46

and a detent 47 extends from each side arm 17 to engage the serrations.  To this end, the detent

and serrations provide means by which the rotor may be maintained in an angular position to

which it is set.

Exhibit 7
Page 109

Christopher Lee Halasz
Application No.: 11/607,259
Page 31



Berman clearly discloses all the requirements of claim 2.  A chart comparing Berman to the requirements of claim 2 is set forth below.

| Claim 2 of `272 patent | Berman device |
| --- | --- |
| 2. A lighting apparatus, comprising: | Berman is directed to a flashlight having a lamp 35. |
| a power supply; | Berman includes batteries 40. |
| a body having a plurality of serrations; | The rotor 25 is the body, and includes serrations 46 in the embodiment shown in Fig. 8. |
| a base attached to said body by at least one pivot connection point, said base having a stop; and | The base is the housing 15 and the arms 17. The base and body are pivotably mounted to each other, as described in Col. 3, lines 27-30.  The base includes a detent 47 in the embodiment in Fig. 8.  The detent 47 performs the function of the stop. |
| a light source, attached to said body, and selectively electrically connected to said power supply to cause said light source to emanate light; | The lamp 35 is connected to the batteries through a circuit as is described in Col. 3, lines 30-36. |
| wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. | The serrations 46 and the detent 47 engage one another for retaining the rotor in the angular position to which it is set.  Col. 3, lines 52-59. |

Thus, as set forth above, Berman clearly meets all requirements of claim 2, and thus claim 2 is unpatentable under 35 U.S.C. § 102(b) in view of Berman.

Exhibit 7
Page 110

Christopher Lee Halasz                                                      <u>PATENT</u>
Application No.: 11/607,259
Page 32

### J.      Claim 1 is Unpatentable Under 35 U.S.C. § 103(a) as Being Obvious in View of a Berman

Claim 1 is similar to claim 2, but additionally requires a battery in the body.  An analysis of that claim is set forth in the following chart.

| Claim 1 of `272 patent | Berman device |
|---|---|
| 1. A lighting apparatus, comprising: | Berman is directed to a flashlight having a lamp 35. |
| a body for retaining at least one battery, said body having a plurality of serrations; | The body in Berman is the rotor 25.  Berman includes batteries 40.  The batteries in Berman are not located in the rotor 25.  However, as described below, it would be obvious to include the batteries in the body, especially in light of the fact that batteries, especially miniaturized batteries that are now available and that were not at the time of Berman, would readily fit within the lamp housing.  Thus, conventional smaller batteries, available at the time of filing the `272 patent, would easily mount in the body of Berman. The rotor 25 includes serrations 46 in the embodiment shown in Fig. 8. |
| a base attached to said body by at least one pivot connection point, said base having a stop; and | The base is the housing 15 and the arms 17.  The base and body are pivotally mounted to each other, as described in Col. 3, lines 27-30.  The base includes a detent 47 in the embodiment in Fig. 8.  The detent 47 serves the function of the stop. |
| a light source, housed within said body, and selectively electrically connected to said at least one battery to cause said light source to emanate light; | The lamp 35 is connected to the batteries through a circuit as is described in Col. 3, lines 30-36. |
| wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source. | The serrations 46 and the detent 47 engage one another for retaining the rotor in the angular position to which it is set.  Col. 3, lines 52-59. |

As set forth above, Berman includes each and every element of claim 1, with the exception of the battery being within the body (i.e., the circular rotor).  Instead, in Berman, the battery is mounted in the housing.  However, mounting the battery in the rotor instead of the

Exhibit 7
Page 111

Christopher Lee Halasz                                                    PATENT
Application No.: 11/607,259
Page 33

housing would be within the purview of one with ordinary skill in the art.  Such a move would be motivated by the desire to make the device of Berman more compact and space efficient, and based upon the knowledge in the art at the time of the '272 patent that batteries are smaller and can be easily mounted in a lamp housing with a lamp.  *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).  It is clear that moving the batteries that are currently in the base into the housing, especially in light of the modern use of smaller batteries, would be obvious to a person of ordinary skill in the art.

In addition, recent developments in lamps, and particularly LED lamps, permit batteries to be smaller and lamps to be smaller, allowing room inside the body and multiple different arrangements for a lamp and a battery or batteries so that the body is properly balanced.

Moreover, and importantly, Berman requires a structure for maintaining a circuit through its pivot axes, which may be complicated and/or faulty.  Such a circuit may be avoided by placing the batteries in the body with the lamp.  For at least these additional reason, there is motivation to alter the structure of Berman to include the batteries in the body.

Thus, claim 1 is obvious in view of Berman.  Therefore, claim 1 is unpatentable under 35 U.S.C. § 103(a) in view of Berman.

**K.     Claim 1 is Obvious Under 35 U.S.C. § 103(a) in View of a Combination of Johnson and Sharrah**

Johnson discloses a flashlight having a flat base for attachment to a user's clothing.  As shown below, it comprises a base 10 with a socket 12 on one side and an apparel securement means of desired or convenient kind at the opposite side. The socket 12 is either formed integral with or secured to the base by adhesives or mechanical means. The socket 12 is a hollow, circular shell having an axis at a right angle to the base being closed thereby at one side and open as at 14 at the other side. The opening 14 has an inturned lip 16 to provide a snap-in receptacle for a hollow ball 18 that has a diameter just a little greater than the diameter of the opening in the socket provided by the inturned lip 16. The ball 18 is a swivel support for a flashlight apparatus generally indicated at 20 having as a light or lamp bulb housing 22 and a switch actuator 24.

Exhibit 7
Page 112

Christopher Lee Halasz
Application No.: 11/607,259
Page 34



FIG. I

The battery 36 in Johnson is in the lamp housing, as shown in Fig. 2 below.

FIG. 2



Johnson is directed to the same issue addressed in the `272 patent: adjustment of a lamp body to multiple positions while keeping the base stationary. This goal is described in Johnson as follows: "The flashlight is easily and quickly swiveled about the center of the ball in

Exhibit 7
Page 113

any direction not intersected by the base plate, and stays where it is so manually positioned." (Summary, paragraph 2).

Johnson shows all features of claim 1, with the exception of the serrations and the stops. Sharrah discloses all requirements of claim 1, with the exception of the battery being positioned within the body that includes the lamp. Modifying Sharrah to include batteries in the body would be obvious to a person of ordinary skill in the art under *KSR*. As an example, a person of ordinary skill in the art may combine Sharrah with the teaching of a battery in the body as provided by Johnson, which explicitly discloses batteries being in the same housing with a lamp, and is directed to the same problem of directing a headlamp to a desired position.

Alternatively, a person of ordinary skill may replace the ball and socket arrangement in Johnson with the serration and stop arrangements in Sharrah to come up with the invention of claim 1. In view of either of these combinations, claim 1 would be obvious in view of a combination of Sharrah and Johnson. Thus, claim 1 is invalid under 35 U.S.C. § 103(a).

**L.     Claim 1 is Obvious Under 35 U.S.C. § 103(a) in View of a Combination of Johnson and Leung**

Johnson discloses all features of claim 1, with the exception of the serrations and the stops. Leung discloses all requirements of claim 1, with the exception of the battery being positioned within the body that includes the lamp. Modifying Leung to move the batteries into the body of Leung would be obvious to a person of ordinary skill in the art based upon the teachings in Johnson. Johnson explicitly discloses batteries being in the same housing with a lamp, and is directed to the same problem of directing a headlamp to a desired position.

As an alternative obvious combination, a person of ordinary skill may replace the ball and socket arrangement in Johnson with the serration and stop arrangements in Leung to come up with the invention of claim 1.

In view of either of these combinations, claim 1 would be obvious in view of a combination of Leung and Johnson. Thus, claim 1 is invalid under 35 U.S.C. § 103(a).

**M.     Claim 1 is Obvious Under 35 U.S.C. § 103(a) in View of a Combination of Johnson and Berman**

Johnson discloses all features of claim 1, with the exception of the serrations and the stops. Berman discloses all requirements of claim 1, with the exception of the battery being

Exhibit 7
Page 114

Christopher Lee Halasz                                    <u>PATENT</u>
Application No.: 11/607,259
Page 36

positioned within the body that includes the lamp. Modifying Berman to move the batteries into the body of Berman would be obvious to a person of ordinary skill in the art based upon the teachings in Johnson. Johnson explicitly discloses batteries in the same housing with a lamp, and is directed to the same problem of directing a headlamp to a desired position.

As an alternative obvious combination, a person of ordinary skill may replace the ball and socket arrangement in Johnson with the serration and stop arrangements in Berman to come up with the invention of claim 1.

In view of either of these combinations, claim 1 would be obvious in view of a combination of Berman and Johnson. Thus, claim 1 is invalid under 35 U.S.C. § 103(a).

### N.     Claim 1 is Obvious Under 35 U.S.C. § 103(a) in View of a Combination of Stretton and Johnson

Johnson shows all features of claim 1, with the exception of the serrations and the stops. Stretton discloses all requirements of claim 1, with the exception of the battery being positioned within the body that includes the lamp. Modifying Stretton to move the batteries into the body of Stretton would be obvious to a person of ordinary skill in the art based upon the teachings in Johnson. Johnson explicitly discloses batteries being in the same housing with a lamp, and is directed to the same problem of directing a headlamp to a desired position.

Alternatively, a person of ordinary skill may replace the ball and socket arrangement in Johnson with the serration and stop arrangements in Stretton to come up with the invention of claim 1.

In view of either of these combinations, claim 1 would be obvious in view of a combination of Stretton and Johnson. Thus, claim 1 is invalid under 35 U.S.C. § 103(a).

### O.     Claim 1 is Obvious Under 35 U.S.C. § 103(a) in View of a Combination of Leung and Thayer

Leung discloses the requirements of claim 1, with the exception of the battery being positioned within the body that includes the lamp. As set forth above, modifying Leung to include batteries in the body would be within the purview of a person of ordinary skill in the art, and thus would be obvious to a person of ordinary skill in the art under *KSR*. As an example, a person of ordinary skill in the art may combine Leung with Thayer, which explicitly discloses

Exhibit 7
Page 115

Christopher Lee Halasz                                                    <u>PATENT</u>
Application No.: 11/607,259
Page 37

batteries being in the same housing with a lamp.  Thayer is directed to the same problem of directing a headlamp to a desired position.  In view of this combination, claim 1 would be obvious.

 Thus, under the above, claim 1 would be obvious in view of a combination of Leung and Thayer.  Thus, claim 1 is invalid under 35 U.S.C. § 103(a).

**P.** **Claim 1 is Obvious Under 35 U.S.C. § 103(a) in View of a Combination of Stretton and Thayer**

 Stretton discloses the requirements of claim 1, with the exception of the battery being positioned within the body that includes the lamp.  As set forth above, modifying Stretton to include batteries in the body would be within the purview of a person of ordinary skill in the art, and thus would be obvious to a person of ordinary skill in the art under *KSR*.  As an example, a person of ordinary skill in the art may combine Stretton with Thayer, which explicitly discloses batteries being in the same housing with a lamp.  Thayer is directed to the same problem of directing a headlamp to a desired position.  In view of this combination, claim 1 would be obvious.

 Thus, under the above, claim 1 would be obvious in view of a combination of either Stretton and Thayer.  Thus, claim 1 is invalid under 35 U.S.C. § 103(a).

**Q.** **Claim 1 is Obvious Under 35 U.S.C. § 103(a) in View of a Combination of Sharrah and Thayer**

 Sharrah discloses the requirements of claim 1, with the exception of the battery being positioned within the body that includes the lamp.  As set forth above, modifying Sharrah to include batteries in the body would be within the purview of a person of ordinary skill in the art, and thus would be obvious to a person of ordinary skill in the art under *KSR*.  As an example, a person of ordinary skill in the art may combine Sharrah with Thayer, which explicitly discloses batteries being in the same housing with a lamp.  Thayer is directed to the same problem of directing a headlamp to a desired position.  In view of this combination, claim 1 would be obvious.

 Thus, under the above, claim 1 would be obvious in view of a combination of either Sharrah and Thayer.  Thus, claim 1 is invalid under 35 U.S.C. § 103(a).

Exhibit 7
Page 116

Christopher Lee Halasz
Application No.: 11/607,259
Page 38

<u>PATENT</u>

    **R.**    **Claim 1 is Obvious Under 35 U.S.C. § 103(a) in View of a Combination of Berman and Thayer**

        Berman discloses the requirements of claim 1, with the exception of the battery being positioned within the body that includes the lamp. As set forth above, modifying Berman to include batteries in the body would be within the purview of a person of ordinary skill in the art, and thus would be obvious to a person of ordinary skill in the art under *KSR*. As an example, a person of ordinary skill in the art may combine Berman with Thayer, which explicitly discloses batteries being in the same housing with a lamp. Thayer is directed to the same problem of directing a headlamp to a desired position. In view of this combination, claim 1 would be obvious.

        Thus, under the above, claim 1 would be obvious in view of a combination of either Berman and Thayer. Thus, claim 1 is invalid under 35 U.S.C. § 103(a).

Exhibit 7
Page 117

Christopher Lee Halasz
Application No.: 11/607,259
Page 39

<u>PATENT</u>

## IV.    Conclusion

This Request raises numerous substantial new questions of patentability.  Further, this Request provides valid rejections for claims 1 and 2 of the `272 patent.  Claims 1 and 2 are invalid because these claims are anticipated by and/or obvious over the prior art for reasons provided above.  Accordingly, reexamination of these patent claims is requested.

Respectfully submitted,

/Roger D. Wylie/

Roger D. Wylie
Reg. No. 36,794

TOWNSEND and TOWNSEND and CREW LLP
Two Embarcadero Center, Eighth Floor
San Francisco, California  94111-3834
Tel: 206-467-9600
Fax: 415-576-0300

61921527 v1

Exhibit 7
Page 118

PTO/SB/08A (01-08)

| Substitute for form 1449A/PTO | **Complete if Known** | |
|---|---|---|
| | Application Number | Unassigned |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Filing Date | Herewith |
| | First Named Inventor | Christopher Lee Halasz |
| | Art Unit | Unassigned |
| *(Use as many sheets as necessary)* | Examiner Name | Unassigned |
| Sheet | 1 | of | 1 | Attorney Docket Number | 27451C-014100US |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number Kind Code[2] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | B | US-4,918,596 | 04-10-90 | Sharrah | |
| | C | US-6,142,644 | 11-07-00 | Leung | |
| | D | US-4,521,831 | 06-04-85 | Thayer | |
| | E | US-4,967,323 | 10-30-90 | Johnson | |
| | F | US-2,612,598 | 09-30-52 | Berman | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]   Number[4]   Kind Code[5] (if known) | | | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|---|---|
| | A | GB | 248030 | | 03-01-26 | Stretton | | ☐ |
| | | | | | | | | ☐ |
| | | | | | | | | ☐ |
| | | | | | | | | ☐ |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.  [1] Applicant's unique citation designation number (optional). [2] Kind Codes of U.S. Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST. 16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Exhibit 7
Page 119