1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

**CENTRAL DIVISION**

11

| | |
|---|---|
| MAG INSTRUMENT, INC., a California corporation, | ) Case No. CV 09-01842-R (OPx) |
| Plaintiff, | ) |
| v. | ) **STATEMENT OF** |
| | ) **UNCONTROVERTED FACTS** |
| THE COLEMAN COMPANY, INC., a Delaware corporation, and DOES 1-10, | ) **AND CONCLUSIONS OF LAW** |
| | ) **SUPPORTING JUDGMENT ON** |
| | ) **COLEMAN'S MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| Defendants. | ) |
| | ) |
| | ) |
| AND RELATED COUNTERCLAIMS | ) **Honorable Manuel L. Real** |
| | ) |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Uncontroverted Facts

1.      United States Patent 7,410,272 ("the Halasz Patent") claims priority through a chain of applications reaching back to provisional application No. 60/224,313, filed August 2000.  (Exhibit 1 to Rotter Decl. at 1.)

2.      Claim 1 of the Halasz Patent is:  A lighting apparatus, comprising:

   a.      a body for retaining at least one battery, said body having a plurality of serrations;

   b.      a base attached to said body by at least one pivot connection point, said base having a stop; and

   c.      a light source, housed within said body, and selectively electrically connected to said at least one battery to cause said light source to emanate light;

   d.      wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source.  (Exhibit 1 to Rotter Decl. at Col. 5, lines 25-35.)

3.      Claim 2 of the Halasz Patent is:  A lighting apparatus, comprising:

   a.      a power supply;

   b.      a body having a plurality of serrations;

   c.      a base attached to said body by at least one pivot connection point, said base having a stop; and

   d.      a light source, attached to said body, and selectively electrically connected to said power supply to cause said light source to emanate light;

   e.      wherein said stop is capable of engaging with one or more of said serrations to facilitate desired angular adjustment of light emanating from said light source.  (Exhibit 1 to Rotter Decl. at Col. 5, lines 36-46.)

4.      The prior art to the Halasz Patent is easily understood.

1

1

**Facts relating to the Petzl Micro anticipating Claims 1 and 2**

2   5.  The Petzl Micro was on sale in the United States prior to August 10,

3 1999.  (Declaration of Paul Petzl ("Petzl Decl.") at ¶¶ 2-9; Deposition of Christopher

4 Halasz ("Halasz Depo.") at 35:24-37:16, 40:21-41:6, 43:10-23 & Ex. 7 [Rotter Decl.

5 Exs. 2 & 16].)

6   6.  The Petzl Micro is a lighting apparatus.  (Declaration of Kevin Tarter

7 ("Tarter Decl.") at ¶ 6 and Ex. 3; Petzl Decl. at ¶ 8, Ex. 6.)

8   7.  The Petzl Micro has a body for retaining at least one battery.  (Tarter

9 Decl. at ¶ 6 and Ex. 3; Petzl Decl. at ¶ 8, Ex. 6; Halasz Depo. at 44:21-45:22.)

10   8.  The body of the Petzl Micro has a plurality of serrations.  (Tarter Decl.

11 at ¶ 6 and Ex. 3; Petzl Decl. at ¶ 8, Ex. 6; Halasz Depo. at 44:21-45:22.)

12   9.  The Petzl Micro has a base that is attached to the body by at least one

13 pivot connection point.  (Tarter Decl. at ¶ 6 and Ex. 3; Petzl Decl. at ¶ 8, Ex. 6.)

14   10.  The base of the Petzl Micro has a stop.  (Tarter Decl. at ¶ 6 and Ex. 3;

15 Petzl Decl. at ¶ 8, Ex. 6; Halasz Depo. at 44:21-45:22.)

16   11.  The body of the Petzl Micro houses a light source.  (Tarter Decl. at ¶ 6

17 and Ex. 3; Petzl Decl. at ¶ 8, Ex. 6; Halasz Depo. at 44:21-45:22.)

18   12.  The light source of the Petzl Micro is selectively electrically connected

19 to at least one battery, which is a power source.  (Tarter Decl. at ¶ 6 and Ex. 3; Petzl

20 Decl. at ¶ 8, Ex. 6.)

21   13.  The electrical connection of the battery and the light source on the Petzl

22 Micro causes the light source to emanate light.  (Tarter Decl. at ¶ 6 and Ex. 3; Petzl

23 Decl. at ¶ 8, Ex. 6.)

24   14.  The stop on the Petzl Micro is capable of engaging one or more of the

25 serrations on the body to allow the light emanating from the light source to be

26 angularly adjusted.  (Tarter Decl. at ¶ 6 and Ex. 3; Petzl Decl. at ¶ 8, Ex. 6; Halasz

27 Depo. at 44:21-45:22.)

28   15.  The engagement of the stop and the serrations on the Petzl Micro

1  facilitates angular adjustment of the light emanating from the light source.  (Tarter

2  Decl. at ¶ 6 and Ex. 3; Petzl Decl. at ¶ 8, Ex. 6; Halasz Depo. at 44:21-45:22.)

3

4  **<u>Facts relating to prior art that anticipates Claim 2</u>**

5     16. The Petzl Duo was on sale in the United States prior to August 10,

6  1999.  (Petzl Decl. at ¶¶ 2-9.)

7     17. The Petzl Duo is a lighting apparatus.  (Tarter Decl. at ¶ 6 and Ex. 4;

8  Petzl Decl. at ¶ 8, Ex. 6.)

9     18. The Petzl Duo has a power supply.  (Tarter Decl. at ¶ 6 and Ex. 4; Petzl

10  Decl. at ¶ 8, Ex. 6.)

11     19. The Petzl Duo has a body with a plurality of serrations.  (Tarter Decl. at

12  ¶ 6 and Ex. 4; Petzl Decl. at ¶ 8, Ex. 6.)

13     20. The Petzl Duo has a base that is attached to the body by at least one

14  pivot connection point.  (Tarter Decl. at ¶ 6 and Ex. 4; Petzl Decl. at ¶ 8, Ex. 6.)

15     21. The base of the Petzl Duo has a stop.  (Tarter Decl. at ¶ 6 and Ex. 4;

16  Petzl Decl. at ¶ 8, Ex. 6.)

17     22. The Petzl Duo's light source is attached to its body.  (Tarter Decl. at ¶ 6

18  and Ex. 4; Petzl Decl. at ¶ 8, Ex. 6.)

19     23. The light source of the Petzl Duo is selectively electrically connected to

20  a power source.  (Tarter Decl. at ¶ 6 and Ex. 4; Petzl Decl. at ¶ 8, Ex. 6.)

21     24. The electrical connection of the battery and the light source on the Petzl

22  Duo causes the light source to emanate light.  (Tarter Decl. at ¶ 6 and Ex. 4; Petzl

23  Decl. at ¶ 8, Ex. 6.)

24     25. The stop on the Petzl Duo is capable of engaging one or more of the

25  serrations on the body to allow the light emanating from the light source to be

26  angularly adjusted.  (Tarter Decl. at ¶ 6 and Ex. 4; Petzl Decl. at ¶ 8, Ex. 6.)

27     26. **U.K. Patent No. 248,030 was issued to Stretton ("Stretton") on**

28  **March 1, 1926.**  (Declaration of Jonathan Rotter ("Rotter Decl.") ¶ 9 and Ex. 8.)

1    27.    Stretton claims "Improvements relating to Electric Hand Lamps."

2    (Stretton at page 1 in title.)

3    28.    Stretton has a "casing *b* containing the battery."  (Stretton at page 2,

4    lines 62-63.)

5    29.    Stretton has "a series of recesses *g* upon the lamp socket or holder"

6    Stretton at page 2, 83-85.  "Alternatively, . . . a ratchet and pawl device, one of the

7    elements of which is fitted upon the socket or holder."  (Stretton at page 1, lines 53-

8    56.)

9    30.    Stretton has "a battery casing [*b*] [and] a lamp socket or holder [*a*]

10   pivotally mounted upon a transverse axis between brackets [*d*] extending up from the

11   top of the casing."  (Stretton at page 2, lines 38-43; see also 59-65.)

12   31.    Stretton has "a spring pressed pin mounted upon the top of the casing."

13   (Stretton at page 2, lines 43-44; see also page 2, lines 76-80.)  ("The means by which

14   the angular position of the lamp socket or holder . . . is determined comprises a

15   spring plunger device *f* carried by lamp top *e*.")

16   32.    Stretton has a "circuit through the lamp bulb . . . [that] may be

17   completed through flexible leads extending from the battery to the socket or holder,

18   or it may be completed by way of the cover plate and the standard or the standards

19   and the socket or holder, the construction of these parts being such as to provide the

20   negative and positive paths for the current."  (Stretton at page 1, lines 68-78; see also

21   page 2, lines 86-92.)

22   33.    Stretton has "a spring plunger device *f* . . . adapted to engage in any one

23   of a series of recesses *g* formed upon the lamp socket or holder *a*" "whereby [the

24   lamp socket or holder] may be set in any determined angular position."  (Stretton at

25   page 2, lines 80-85; 48-50.)

26   34.    Stretton demonstrates every element of Claim 2 of the Halasz Patent.

27   (Rotter Decl. Exs. 1 and 8.)

28   35.    **U.S. Patent No. 6,142,644 was issued to Leung ("Leung"), who had**

4

1  **filed the application for the patent on April 27, 1999.**  (Rotter Decl. ¶ 10 and Ex.
2  9.)

3    36.    Leung is a "flashlight . . . clamped to a book." Leung at Col. 3, lines 40-
4  41.

5    37.    Leung describes that "the flashlight . . . accommodate[s] . . . batteries,"
6  Leung at Col. 4, lines 1-2.

7    38.    In Leung, there are "[t]eeth on either side of lamp housing," Leung at
8  Col. 4, lines 9-10.

9    39.    In Leung, the "[m]ain housing has . . . side supports to engage lamp
10  housing . . . . Cowl snaps into housing to capture lamp housing.  End caps fit
11  between housing and cowl to provide bearings for lamp housing [allowing] rotation
12  of lamp housing."  (Leung at Col. 4, lines 5-7; 15-19 and Fig. 6.)

13    40.    Leung has "nibs on the plastic spring member."  (Leung at Col. 4, lines
14  10-11.)

15    41.    In Leung, the "lamp housing and lamp . . . which connect electrically at
16  one of their ends to battery contact while the other ends of switch brushes are in
17  sliding electrical contact with lamp contacts."  (Leung at Col. 4, line 65-Col. 5, line
18  4.)  "Rotation of the lamp housing . . . interrupts the conductive path to lamp . . .
19  thereby turning off power."  (Leung at Col. 5, lines 12-14.)

20    42.    In Leung, the "nibs . . . engage the teeth on either side of the lamp
21  housing to stop the rotation at any desired intermediate point."  (Leung at Col. 4,
22  lines 8-14.)

23    43.    Leung demonstrates every element of Claim 2 of the Halasz Patent.
24  (Rotter Decl. Exs. 1 and 9.)

25    44.    **U.S. Patent No. 2,612,598 was issued to Berman ("Berman") on**
26  **September 30, 1952.**  (Rotter Decl. at ¶ 11 and Ex. 10.)

27    45.    Berman describes a "portable lighting unit" at Col. 1, line 2.

28    46.    Berman has "a pair of dry cells" [batteries] at Col. 3, lines 2-3.

47.     In Berman, "the cylindrical wall of the rotor is serrated as indicated at 46." (Col. 3, lines 54-55 and Fig. 8.)

48.     In Berman, "[n]ear its upper end, each carriage side arm is provided on its inner face with a circular bearing extrusion on which is mounted a circular hollow rotor.  (Col. 2, lines 29-33.)  "[T]he rotor [can be] rotated to any desired angular position."  (Col. 3, lines 27-30.)

49.     In Berman, "a detent extends from each side arm" at Col. 3, lines 56-57.

50.     In Berman, "[m]ounted in socket is an electric lamp . . . .  "Contact is made with the rings by conductor strips which extend along the inner faces of the carriage side arms [and] extend through suitable holes at the ends of the carriage cross bar, and . . . are connected to the terminals of a pair of dry cells."  (Col. 2, line 43-Col. 3, line 3.)  "The rotation of the rotor . . . complet[es] the circuit and illuminat[es] the lamp," Col. 3, lines 30-36.

51.     In Berman, "an ordinary bulb socket [is] secured within the rotor." (Col. 2, lines 42-43.)  To "retain[] the rotor in the angular position to which it is set . . . the cylindrical wall of the rotor is serrated . . . and a detent extends from each side arm to engage said serrations."  (Col. 3, lines 52-59.)

52.     Berman demonstrates every element of Claim 2 of the Halasz Patent. (Rotter Decl. Exs. 1 and 10.)


**Additional facts relevant to obviousness of Claim 1**

53.     Stretton has a light source housed within the body.  (Rotter Decl. at ¶ 9 and Ex. 8.)

54.     The light source of Stretton is selectively electrically connected to at least one battery.  (Rotter Decl. at ¶ 9 and Ex. 8.)

55.     The electrical connection of the light source and at least one battery in Stretton causes the light source to emanate light.  (Rotter Decl. at ¶ 9 and Ex. 8.)

56.     Stretton demonstrates every element of Claim 1, except the body does

1  not retain a battery.  (Rotter Decl. Exs. 1 and 8.)

2      57.   Leung has a light source housed within the body.  (Rotter Decl. at ¶ 10

3  and Ex. 9.)

4      58.   The light source of Leung is selectively electrically connected to at least

5  one battery.  (Rotter Decl. at ¶ 10 and Ex. 9.)

6      59.   The electrical connection of the light source and at least one battery in

7  Leung causes the light source to emanate light.  (Rotter Decl. at ¶ 10 and Ex. 9.)

8      60.   Leung demonstrates every element of Claim 1, except the body does not

9  retain a battery.  (Rotter Decl. Exs. 1 and 9.)

10     61.   Berman has a light source housed within the body.  (Rotter Decl. at ¶ 11

11  and Ex. 10.)

12     62.   The light source of Berman is selectively electrically connected to at

13  least one battery.  (Rotter Decl. at ¶ 11 and Ex. 10.)

14     63.   The electrical connection of the light source and at least one battery in

15  Berman causes the light source to emanate light.  (Rotter Decl. at ¶ 11 and Ex. 10.)

16     64.   Berman demonstrates every element of Claim 1 of the Halasz Patent,

17  except the body does not retain a battery.  (Rotter Decl. Exs. 1 and 10.)

18     65.   **The "Clover-Leaf" bicycle lamp was on sale in the United States**

19  **from at least 1899.**  (Declaration of Stuart Schneider ("Schneider Decl.") at ¶ 10 and

20  Exs. 1 & 2.)

21     66.   The Clover-Leaf bicycle lamp had a base that attached to the stem of the

22  bicycle and a wing nut that permitted the adjustment up and down of the batteries

23  and lamp as a single unit.  (Schneider Decl. Ex. 10.)

24     67.   The Clover-Leaf demonstrated every element of Claim 1 of the Halasz

25  Patent except that it may have used a different method to facilitate angular

26  adjustment.  (Schneider Decl. ¶¶ 11-13 & Exs. 1 & 2; Rotter Decl. Ex. 1.)

27     68.   **U.S. Patent No. 4,967,323 issued to Johnson et al. in 1990**

28  ("Johnson").  (Rotter Decl. Ex. 11.)

7

1      69.    In Johnson, a flashlight with a battery and light source was connected to

2    a ball that swiveled relative to the base to provide angular adjustment of the light.

3    (Rotter Decl. Ex. 11.)

4      70.    Johnson demonstrated every element of Claim 1 of the Halasz Patent

5    except that it used a different method to facilitate angular adjustment.  (Rotter Decl.

6    Exs. 1 and 11.)

7      71.    **U.S. Patent No. 4,521,831 issued to Thayer in 1985** ("Thayer").

8    (Rotter Decl. Ex. 12.)

9      72.    In Thayer, the battery operated lamp components—including both the

10    batteries and the lamp—rotate together relative to the base.  (Rotter Decl. Ex. 12.)

11      73.    Thayer demonstrated every element of Claim 1 of the Halasz Patent

12    except that it used a different method to facilitate angular adjustment.  (Rotter Decl.

13    Exs. 1 and 12.)

14      74.    Christopher Halasz, at the time that he designed the headlamp disclosed

15    in the Halasz Patent, had an undergraduate degree in physics, no graduate courses,

16    and about 10 years of experience in designing flashlights. (Halasz Depo. at 10:2-7,

17    11:14-12:7, 13:12-14.)

18      75.    Kevin Tarter, designer of the Coleman 3AAA LED headlamp, had an

19    undergraduate degree in engineering and 15 years experience as an engineer

20    involving lights or plastics. (Tarter Decl. at ¶ 2.)

21      76.    Mag's expert Professor Emeritus Martin J. Siegel, who has a Bachelor

22    of Science in Mechanical Engineering, Masters Degree in Metallurgical Engineering,

23    and more than 50 years experience as an engineer, claims to be a person of ordinary

24    skill in the art of designing headlamps.  (Siegel Decl. (Dkt. No. 57, Nov. 16, 2009) at

25    ¶¶ 2, 6.)

26      77.    It was obvious even to a layman by 1999 to put the battery in the body

27    of a lighting device with angular adjustment so the battery and lamp move together

28    as the body was rotated relative to the base.  (Rotter Decl. Exs. 8 to 12; Schneider

1  Decl. ¶ 11-13 and Exs. 1 & 2; Petzl Decl. ¶¶ 2, 8-9 and Exs. 6 & 7.)

2       78.    Moving the battery into the body of a lighting device with serrations on

3  the body and a stop on the base to facilitate angular adjustment did not produce

4  unexpected results.  (Rotter Decl. Ex. 1.)

5       79.    It was obvious even to a layman by 1999 to use serrations on the body

6  and a stop on the base to facilitate angular adjustment of lighting devices where the

7  body contained both a battery and a lamp.  (Rotter Decl. Exs. 8 to 12; Schneider

8  Decl. ¶ 11-13 and Exs. 1 & 2; Petzl Decl. ¶¶ 2, 8-9 and Exs. 6 & 7.))

9       80.    Using serrations on the body and a stop on the base to facilitate angular

10  adjustment of lighting devices where the body contained both a battery and a lamp

11  did not produce unexpected results.  (Rotter Decl. Ex. 1.)

12       81.    **In 1997, U.S. Patent No. 5,605,394 was issued to Chen ("Chen").**

13  (Rotter Decl. Ex. 5.)

14       82.    Chen described a flashlight containing batteries and a light source with

15  a rotatable head that used serrations and a stop for angular adjustment.  (Rotter Decl.

16  Ex. 5.)

17       83.    It was obvious to even a layman by 1999 that the serrations and stop in

18  Chen could be switched so the serrations were on the body and the stop on the base.

19  (Rotter Decl. Exs. 5, 8 to 12; Schneider Decl. ¶ 11-13 and Exs. 1 & 2; Petzl Decl. ¶¶

20  2, 8-9 and Exs. 6 & 7.)

21       84.    Switching the serrations and stop from the body and the base

22  respectively did not produce unexpected results in facilitating angular adjustment of

23  lighting devices.  (Rotter Decl. Ex. 1.)

24       85.    Alternatively, it was obvious even to a layman by 1999 that the light

25  source in Chen could be moved to the part of the apparatus that contained the

26  battery. (Rotter Decl. Exs. 5, 8 to 12; Schneider Decl. ¶ 11-13 and Exs. 1 & 2; Petzl

27  Decl. ¶¶ 2, 8-9 and Exs. 6 & 7.)

28       86.    Moving the part of the apparatus that contained the battery did not

1   produce unexpected results in facilitating angular adjustment of lighting devices.

2   (Rotter Decl. Ex. 1.)

3

4                           **Conclusions of Law**

5       1.      Invalidity is a complete defense to a claim of patent infringement.

6   *Lough v. Brunswick Corp.*, 86 F.3d 1113, 1123 (Fed. Cir. 1996).

7       2.      The defendant has the burden of proving invalidity by clear and

8   convincing evidence. *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir.

9   1991).

10      3.      Invalidity can be established on the grounds of "anticipation" if the

11  alleged invention can be found in the prior art.  35 U.S.C. § 102(b).

12      4.      Prior art anticipates a claim if every element of the claim is described or

13  demonstrated. *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631

14  (Fed. Cir. 1987).

15      5.      A patent is invalid if it is "obvious" in light of the prior art.  35 U.S.C. §

16  103(a).

17      6.      Obviousness can be shown by a single piece of prior art or by a

18  combination of pieces of the prior art.  *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727,

19  1740 (2007); *Sakraida v. AG Pro Inc.*, 425 U.S. 273, 282 (1976).

20      7.      Obviousness is a question of law that depends on three principal factual

21  inquiries:  (1) the scope and content of the prior art; (2) the differences between the

22  prior art and the claims; and (3) the level of ordinary skill in the pertinent art.

23  *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966).

24      8.      Prior art includes anything that was on sale in the United States or

25  disclosed in publications prior to the date of invention, which cannot be more than

26  one year before the date of the patent application.  35 U.S.C. § 102(b).

27      9.      Prior art includes an invention described in a U.S. patent application

28  filed before the invention of the patent at issue.  35 U.S.C. §102(e).

                                      10

1    10.    Obviousness can be shown by a single piece of prior art or by a

2    combination of pieces of the prior art.  *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727,

3    1740 (2007).

4    11.    Outside of fields where scientific literature drives innovation, "a person

5    of ordinary skill has good reason to pursue the known options within his or her

6    technical grasp.  If this leads to the anticipated success, it is likely the product not of

7    innovation, but of ordinary skill and common sense."  *Id*. at 1742.

8    12.    The Court may decide the issues of anticipation and obviousness

9    without the need for expert opinion where the art is one that can be understood by a

10   layman.  *See, e.g., Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1573

11   (Fed. Cir. 1984), *Chore-Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774,

12   779 (Fed. Cir. 1983), *Point Plastics, Inc. v. Rainin Instrument Co., Inc.*, 1984 WL

13   63125, *4 (N.D. Cal.1984).

14   13.    The ordinary meaning of claim language may be readily apparent to a

15   lay judge.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

16   *See also, Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1119-20 (Fed. Cir. 2002).

17   14.    The Petzl Micro headlamp anticipates Claims 1 and 2 of the Halasz

18   Patent.

19   15.    The Petzl Duo headlamp anticipates Claim 2 of the Halasz Patent.

20   16.    Claims 1 and 2 of the Halasz Patent were obvious under 35 U.S.C. §

21   103 in light of the prior art presented on Coleman's motion for summary judgment.

22   The Court has read these facts and the objections filed by plaintiff and adopts

23   these uncontroverted facts. (R)

24

25   Dated: February 17, 2010

26                                            _____

27                                            Hon. Manuel L. Real
                                             United States District Judge
28

11